# APPENDIX A

## SELECTED CERTIFIED CLASSES OF PEOPLE WITH DISABILITIES IN SYSTEMIC CONTEXTS
### *COBB V. GDCS*, 1:19-CV-03285-WMR

| Case | Disability Class Certified |
|---|---|
| *Harris v. Ga. Dep't of Corr.*, No. 5:18-cv-00365-TES, 2021 WL 6197108, at *13-*14 (M.D. Ga. Dec. 29, 2021).<br><br>Deaf and hard of hearing incarcerated people brought ADA, Section 504, and constitutional claims challenging communication barriers in Georgia prisons. | "All present and future deaf and hard of hearing individuals in GDC custody, who require hearing-related accommodations and services to communicate effectively and/or to access or participate equally in programs, services, or activities available to individuals in GDC custody." |
| *G.T. v. Bd. of Educ.*, No. 2:20-cv-00057, 2021 U.S. Dist. LEXIS 159801, at *56-57 (S.D. W. Va. Aug. 24, 2021).<br><br>Disabled students and non-profit advocacy group brought ADA, Section 504, and IDEA claims challenging failure to provide adequate behavioral supports to students with disabilities who require such supports. | "All Kanawha County Schools students with disabilities who need behavior supports and have experienced disciplinary removals from any classroom." |
| *A.A. v. Phillips,* 339 F.R.D. 232, 249 (M.D. La. 2021).<br><br>Medicaid-eligible children with diagnosed mental health conditions brought ADA, Section 504, and Medicaid claims challenging state's failure to provide intensive home and community-based services. | "All Medicaid-eligible youth under the age of 21 in the State of Louisiana (1) who have been diagnosed with a mental health or behavioral disorder, not attributable to an intellectual or developmental disability, and (2) for whom a licensed practitioner of the healing arts has recommended intensive home- and community-based services to correct or ameliorate their disorders." |
| *J.N. v. Or. Dep't of Educ.*, 338 F.R.D. 256, 275 (D. Or. 2021).<br><br>Public school children with disabilities brought ADA, Section 504, and IDEA claims challenging statewide pattern of districts of misusing shortened school day schedules for students with disability-related behaviors. | "[A]ll students with disabilities aged 3 to 21 residing in Oregon who are eligible for special education and related services under the IDEA and are currently being subjected to a shortened school day or are at substantial risk of being subjected to a shortened school day due to their disability-related behaviors." |

| Case | Disability Class Certified |
|---|---|
| *G.H. v. Tamayo*, No. 4:19cv431-RH-MJF, 2021 U.S. Dist. LEXIS 215935, at *16, 339 F.R.D. 584 (N.D. Fla. Oct. 22, 2021).<br><br>Children with disabilities in custody of Department of Juvenile Justice brought ADA and constitutional claims challenging use of solitary confinement. | Class: "[C]hildren who are or will be in solitary confinement in a Florida Department of Juvenile Justice detention facility."<br><br>Subclass: "[C]hildren who are or will be in solitary confinement in a Florida Department of Juvenile Justice detention facility who have disabilities as defined in the Americans with Disabilities Act." |
| *Newkirk v. Pierre*, No. 19-CV-4283 (NGG) (SMG), 2020 U.S. Dist. LEXIS 144887, at *36-37 (E.D.N.Y. Aug. 11, 2020), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 155539, at *2 (E.D.N.Y. Aug. 26, 2020).<br><br>Low-income individuals with disabilities brought ADA and Section 504 claims challenging failure to provide reasonable accommodations to assist with complex eligibility standards requiring ability to comprehend and complete multi-page applications and forms and provide documentary verification of eligibility factors. | "[A]ll Suffolk County residents with disabilities who: (a) have applied for or will apply for SNAP, Medicaid, or TA from SCDSS since July 1, 2018, and are entitled to reasonable accommodations in the application process to participate in or benefit from these programs; and/or (b) have been found eligible for such programs and are entitled to reasonable accommodations in order to enjoy equal opportunity to participate in or benefit from them." |
| *Ga. Advocacy Office v. Jackson*, No. 1:19-cv-01634-WMR-JFK, 2019 U.S. Dist. LEXIS 230315, at *5 (N.D. Ga. Sep. 10, 2019); *see also Ga. Advocacy Office v. Jackson*, No. 1:19-cv-01634-WMR-JFK, 2019 U.S. Dist. LEXIS 230316, at *19-20 (N.D. Ga. July 30, 2019).<br><br>Women with psychiatric disabilities brought claims challenging pretrial placement in solitary confinement, the denial of jail-based competency restoration program, and discrimination in provision of programs and activities. | "All women who experience psychiatric disabilities who are now or will in the future be confined in the mental health pods for female detainees in the Fulton County Jail system." |
| *Wilburn v. Nelson*, 329 F.R.D 190, 199 (N.D. Ind. 2018).<br><br>Parents of children with disabilities in juvenile justice center brought claims ADA, Section 504, IDEA, and constitutional claims challenging use of solitary confinement, denial of special education services, and disability discrimination. | Class: "All detainees under the age of 18 years old who have been held or will be held in any form of solitary confinement at the St. Joseph County Juvenile Justice Center since September 7, 2016."<br><br>Subclass: "All members of the Juvenile Class with a disability, as defined by the Individuals with Disabilities in Education Act ("IDEA"), who have been or will be denied |

| Case | Disability Class Certified |
|---|---|
| | the special education and related support services to which they are entitled under the IDEA." |
| *Lacy v. Dart*, No. 14 C 6259, 2015 U.S. Dist. LEXIS 56625, at *20 (N.D. Ill. Apr. 30, 2015), *aff'd*, *Lacy v. Cook County*, 897 F.3d 847, 867 (7th Cir. 2018).<br><br>Wheelchair-using detainees brought ADA and Section 504 claims challenging inaccessible ramps and bathroom facilities at county courthouses. | "All Cook County Jail detainees who have been assigned and currently use a wheelchair." |
| *A.T. by & through Tillman v. Harder*, 298 F. Supp. 3d 391, 404-05, 411 (N.D.N.Y. 2018).<br><br>Minors with disabilities held in correctional facility brought ADA, Section 504, IDEA, and constitutional claims challenging denial of special education services. | "All 16– and 17–year–olds with disabilities, as defined by the Individuals with Disabilities Education Act, who are now or will be incarcerated at the Broome County Correctional Facility, who are in need of special education and related services[.]"<br><br>"All 16– and 17–year–olds with psychiatric and/or intellectual disabilities, as defined by the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973, who are now or will be incarcerated at the Broome County Correctional Facility, who are at risk of being placed in disciplinary segregation because of their disability." |
| *Hizer v. Pulaski Cty.*, No. 3:16-CV-885-JD-MGG, 2017 WL 3977004, at *4, *9 (N.D. Ind. Sept. 11, 2017).<br><br>Individuals with mobility disabilities brought ADA and Section 504 claims alleging that county courthouse was inaccessible to people with physical disabilities. | "[A]ll persons with mobility impairments or other physical disabilities who access or attempt to access, or who will access or will attempt to access, the Pulaski County Courthouse." |
| *McBride v. Michigan Dep't of Corr.*, No. 15-11222, 2017 WL 3097806, at *1, *8 (E.D. Mich. June 30, 2017), *report and recommendation adopted*, 2017 WL 3085785 (E.D. Mich. July 20, 2017).<br><br>Deaf and hard of hearing incarcerated people brought ADA, Section 504, RLUIPA, and constitutional claims challenging denial of effective communication in Michigan prisons. | "[A]ll deaf and hard of hearing individuals in the custody of MDOC [Michigan Department of Corrections] (whether now or in the future), who require hearing-related accommodations, including but not limited to interpreters, hearing devices, or other auxiliary aids or services, to communicate effectively and/or to access or participate in programs, services, or activities available to individuals in the custody of MDOC." |

| Case | Disability Class Certified |
|---|---|
| *Glover v. Laguna Beach*, No. SACV 15-01332 AG (DFMx), 2017 U.S. Dist. LEXIS 167501, at *16 (C.D. Cal. June 23, 2017).<br><br>Individuals with disabilities brought ADA, Section 504, and constitutional claims challenging City's failure to ensure that individuals with disabilities had equal access to city-operated shelter-like facilities for homeless people. | "All homeless persons who reside or will reside in the geographic area of Laguna Beach who have a mental and/or physical disability as defined under section 504 of the Rehabilitation Act and Americans with Disabilities Act and who have been, or are likely to be, cited for violations of California Penal Code section 647(e), Laguna Beach Municipal Code section 8.30.030 and/or Laguna Beach Municipal Code section 18.05.020." |
| *V.W. v. Conway*, 236 F. Supp. 3d 554, 577 (N.D.N.Y. 2017).<br><br>Minors detained in the Onondaga County Justice Center alleged, among other claims, that the jail deprived them of protections guaranteed by IDEA. | "All 16–and 17–year–olds who are now or will be incarcerated at the Onondaga County Justice Center."<br><br>Subclass: "All 16– and 17–year–olds with disabilities, as defined by the [IDEA], who are now or will be incarcerated at the Onondaga County Justice Center, who are in need of special education and related services." |
| *Braggs v. Dunn*, 317 F.R.D. 634, 673–74 (M.D. Ala. 2016). Incarcerated people with mental illness brought constitutional claims challenging inadequate mental health treatment and involuntary medication without due process. | "[A]ll persons with a serious mental-health disorder or illness who are now, or will in the future be, subject to defendants' mental-health care policies and practices in [Alabama Department of Corrections] facilities, excluding the work release centers and Tutwiler Prison for Women."<br><br>"[A]ll persons with a serious mental-health disorder or illness who are now, or will in the future be, subject to defendants' formal involuntary-medication policies and practices." |
| *Disability Law Ctr. v. Utah*, No. 2:15-CV-00645-RJS, 2016 WL 5396681, at *2, *8 (D. Utah Sept. 27, 2016).<br><br>Pretrial detainees declared incompetent to stand trial brought constitutional claim challenging extended periods incarcerated in jail while awaiting competency restoration. | "All individuals who are now, or will be in the future, (a) charged with a crime in Utah, (b) are determined by the court in which they are charged to be mentally incompetent to stand trial, and (c) are ordered to the custody of the executive director of [Utah Department of Human Services] or a designee for the purpose of treatment intended to restore the defendant to competency but remain housed in a Utah county jail." |
| *Steward ex rel. Minor v. Janek*, 315 F.R.D. 472, 493 (W.D. Tex. 2016).<br><br>Persons with intellectual and developmental disabilities brought ADA, Section 504, and Medicaid claims challenging deficiency in community-based mental health | "All Medicaid-eligible persons over twenty-one years of age with intellectual or developmental disabilities or a related condition in Texas who currently or will in the future reside in nursing facilities, or who are being, will be, or should be screened for admission to nursing facilities pursuant to 42 U.S.C. § 1396r(e)(7) and 42 C.F.R. § 483.112 *et seq*." |

Page 4

| Case | Disability Class Certified |
|---|---|
| services causing confinement or risk of confinement in nursing facilities. | |
| *O.B. v. Norwood*, No. 15 C 10463, 2016 WL 2866132, at *1, *5 (N.D. Ill. May 17, 2016).<br><br>Medicaid-eligible children with disabling chronic health conditions brought ADA and Section 504 claims challenging state's denial of in-home nursing services. | "All Medicaid-eligible children under the age of 21 in the State of Illinois who have been approved for in-home shift nursing services by the Defendant, but who are not receiving in-home shift nursing services at the level approved by the Defendant, including children who are enrolled in a Medicaid waiver program, such as the Medically Fragile Technology Dependent (MFTD) Waiver program, and children enrolled in the nonwaiver Medicaid program, commonly known as the Nursing and Personal Care Services (NPCS) program." |
| *Williams v. Conway*, 312 F.R.D. 248, 254 (N.D.N.Y. 2015).<br><br>Deaf incarcerated people brought ADA, Section 504, and constitutional claims challenging failure to provide sign language interpreters and ADA information in county jail. | "[A]ll present and future deaf and hearing-impaired prisoners of the Onondaga County Justice Center who have been, are, or will be discriminated against, solely on the basis of their disability, in receiving the rights and privileges accorded to all other prisoners." |
| *Holmes v. Godinez*, 311 F.R.D. 177, 216-17, 223 (N.D. Ill. 2015).<br><br>Deaf and hard of hearing incarcerated people brought ADA, Section 504, RLUIPA, and constitutional claims challenging denial of hearing accommodations by Illinois Department of Corrections. | "[A]ll individuals incarcerated by [Illinois Department of Corrections] currently and in the future; (ii) who IDOC classified as deaf or hard of hearing or who notified IDOC in writing during the Class Period, either personally or through a family member, that he or she was deaf or hard of hearing; and (iii) who require accommodations, including interpreters or other auxiliary aids or services, to communicate effectively and/or to access programs or services available to individuals incarcerated by IDOC during the Class Period." |
| *Dunakin v. Quigley,* 99 F. Supp. 3d 1297, 1324, 1333 (W.D. Wash. 2015).<br><br>Nursing facility residents with developmental disabilities brought ADA claims alleging that Medicaid-certified nursing facilities in Washington State unnecessary isolated individuals with disabilities. | "[A]ll individuals who: (a) are or will be residents of Medicaid-certified, privately-operated nursing facilities in the State of Washington; and (b) who are Medicaid recipients with an intellectual disability or related condition(s) such that they are eligible to be screened and assessed pursuant to 42 U.S.C. § 1396r(e)(7) and 42 C.F.R. § 483.122 *et seq.*" |
| *N.B. v. Hamos*, 26 F. Supp. 3d 756, 776 (N.D. Ill. 2014).<br><br>Children with psychiatric and behavioral disabilities brought ADA, Section 504, and Medicaid claims | "All Medicaid-eligible children under the age of 21 in the State of Illinois: (1) who have been diagnosed with a mental health or behavioral disorder; and (2) for whom a licensed |

| Case | Disability Class Certified |
|---|---|
| challenging state's denial of residential and community-based outpatient care. | practitioner of the healing arts has recommended intensive home- and community-based services to correct or ameliorate their disorders." |
| *DL v. Dist. of Columbia*, 302 F.R.D. 1, 18 (D.D.C. 2013)<br><br>Residents of Washington, D.C. and former preschool-age children with disabilities brought IDEA claims challenging District's failure to provide appropriate public education. | "All children, who, when they were or will be between the ages of three and five, were or will be disabled, as defined by the IDEA, lived or will live in, or were or will be wards of, the District of Columbia, and were not or will not be identified and/or located for the purposes of offering special education and related services."<br><br>"All children, who, when they were or will be between the ages of three and five, were or will be disabled, as defined by the IDEA, lived or will live in, or were or will be wards of, the District of Columbia, and did not or will not receive an initial evaluation within 120 days of the date of referral for the purposes of offering special education and related services."<br><br>"All children, who, when they were or will be between the ages of three and five, were or will be disabled, as defined by the IDEA, lived or will live in, or were or will be wards of, the District of Columbia, and did not or will not receive a determination of eligibility within 120 days of the date of referral for special education and related services."<br><br>"All children with disabilities, as defined by the IDEA, who lived in or will live in, or are or will be wards of, the District of Columbia, and who participated or will participate in early intervention programs under Part C of IDEA, and who participated or will participate in preschool programs under Part B, and who did not or will not have a "smooth and effective" transition from Part C to Part B by the child's third birthday. A transition shall be considered "smooth and effective" if (1) the transition begins no less than 90 days prior to the child's third birthday; (2) the child is provided with an IEP listing both the type of placement and a specific location for services by the child's third birthday; (3) there is no disruption in services between Part C and Part B services; and (4) Part B personnel are involved in the transition process." |
| *Kenneth R., ex rel. Tri-Cty. CAP, Inc./GS v. Hassan*, 293 F.R.D. 254, 271–72 (D.N.H. 2013).<br><br>Individuals with psychiatric disabilities brought ADA and Section 504 claims against the State of New Hampshire, alleging that the State unnecessarily institutionalized individuals with disabilities and denied them adequate community-based services. | "All persons with serious mental illness who are unnecessarily institutionalized in New Hampshire Hospital or Glencliff or who are at serious risk of unnecessary institutionalization in these facilities. At risk of institutionalization means persons who, within a two year period: (1) had multiple hospitalizations; (2) used crisis or emergency room services for psychiatric reasons; (3) had criminal justice involvement as a result of their mental illness; or (4) were unable to access needed community services." |

| Case | Disability Class Certified |
|---|---|
| *Toney-Dick v. Doar*, No. 12 Civ. 9162 (KBF), 2013 WL 5295221, at *3, *13 (S.D.N.Y. Sept. 16, 2013).<br><br>Disabled residents of New York City brought ADA, Section 504, and Food Stamp Act claims against city administrators challenging their implementation of the city's Disaster Supplemental Nutrition Assistance Program ("D-SNAP"). | "All individuals who (a) have or had a physical or mental impairment that substantially limits one or more major life activities within the meaning of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § [§ ] 12101, *et seq.*, or have a record of such an impairment; (b) are or were eligible to apply for benefits from a New York City [HRA D–SNAP], including the D–SNAP benefits offered in response to "Superstorm Sandy;" (c) reside or resided in the covered zip codes for an HRA D–SNAP Program; and (d) need or needed reasonable accommodations to enable them to apply for D–SNAP benefits." |
| *Hughes v. Judd*, No. 8:12-cv-568-T-23MAP, 2013 WL 1810806, at *1 (M.D. Fla. Apr. 30, 2013).<br><br>Minors detained in Polk County jail brought constitutional claims challenging conditions including use of pepper spray. | "[E]ach person (1) who is now or in the future incarcerated in the Polk County Jail, (2) who is under eighteen or under the jurisdiction of the juvenile court, and (3) who suffers from a 'mental disorder.' For the purpose of this Sub–Class Two, a person who suffers from a "mental disorder" is defined as a person (1) who is diagnosed by a mental health care professional, qualified in Florida both to diagnose mental disorders and to prescribe psychotropic medication, and who is suffering from a "moderate" or "severe" "mental disorder," as defined in the American Psychiatric Association's DSM–IV and (2) whose current diagnosis, including any prescription for psychotropic medication, appears in the person's "intake" records presented to the Polk County Jail at the time the person is presented to, and accepted by, the Polk County Jail for detention." |
| *Pashby v. Cansler*, 279 F.R.D. 347, 356 (E.D.N.C. 2011), *aff'd and remanded sub nom. Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013).<br><br>Medicaid recipients brought ADA, Section 504, and Medicaid claims against the state's Medicaid program, challenging program rule that altered provision of covered personal care services ("PCS"). | "[A]ll current or future North Carolina Medicaid recipients age 21 or older who have, or will have, coverage of PCS denied, delayed, interrupted, terminated, or reduced by Defendant directly or through his agents or assigns as a result of the new eligibility requirements for in-home PCS and unlawful policies contained in IHCA Policy 3E." |
| *P.V. ex rel. Valentin v. Sch. Dist. of Phila.*, 289 F.R.D. 227, 236 (E.D. Pa. 2013).<br><br>Autistic children and their families brought ADA, Section 504, and IDEA claims challenging practice of transferring autistic students out of their preferred schools more often than other students. | "All children with autism in the School District of Philadelphia in grades kindergarten through eight ("K–8") who have been transferred, are in the process of being transferred, or are at risk of being transferred, as a result of the School District's upper-leveling process, the parents and guardians of those children, and future members of the class." |

| Case | Disability Class Certified |
|---|---|
| *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 420–21 (S.D.N.Y. 2012).<br><br>Individuals with disabilities brought ADA, Section 504, and state law claims challenging discrimination in city's emergency and disaster planning. | "All people with disabilities, as defined by the Americans with Disabilities Act, who are within the City of New York and the jurisdiction served by the City of New York's emergency preparedness programs and services." |
| *Strouchler v. Shah,* 286 F.R.D. 244, 247–48 (S.D.N.Y. 2012).<br><br>Disabled recipients of Medicaid brought ADA, Section 504, and constitutional claims against the city health administrators challenging reduction in in-home services. | "All New York City Medicaid recipients of continuous personal care services who, at any time since January 1, 2011, have been threatened with unlawful reduction or discontinuance of these services or whose care has been unlawfully reduced or discontinued because the City Defendant has determined that they do not meet the medical criteria for these services." |
| *Henderson v. Thomas*, 289 F.R.D. 506, 512 (M.D. Ala. 2012).<br><br>Incarcerated people with HIV brought ADA and Section 504 claims challenging disability discrimination in state prison. | "[A]ll present and future prisoners diagnosed with HIV in the custody of the Alabama Department of Corrections." |
| *Lane v. Kitzhaber,* 283 F.R.D. 587, 589-90 (D. Or. 2012).<br><br>Individuals with intellectual and developmental disabilities brought ADA and Section 504 claims against the Oregon Department of Human Services, alleging that the Department's employment services program unnecessarily segregated disabled participants. | "[A]ll individuals in Oregon with intellectual or developmental disabilities who are in, or who have been referred to, sheltered workshops and who are qualified for supported employment services" (internal quotations omitted). |
| *Oster v. Lightbourne*, No. C 09-4668 CW, 2012 WL 685808, at *1–2, *6 (N.D. Cal. Mar. 2, 2012), *order corrected*, No. C 09-4668 CW, 2012 WL 1595102 (N.D. Cal. May 4, 2012).<br><br>Individuals dependent on in-home support services ("IHSS") brought claims under the ADA, Section 504, Medicaid Act, and Social Security Act challenging state | "All recipients of IHSS in the State of California whose IHSS services will be limited, cut, or terminated under the provisions of ABX4 4, and all applicants to IHSS in the State of California who would have been eligible for IHSS services but who are either not eligible, or are eligible for fewer services, as a result of ABX4 4."<br><br>"All recipients of IHSS in the State of California who have received or will receive notices of action that include a reduction of IHSS hours based on SB 73 or Defendants' implementation of SB 73, including future applicants for IHSS services whose notice of |

| Case | Disability Class Certified |
|---|---|
| budget cuts to programs that enabled disabled elderly individuals to avoid institutionalization. | action will reflect reduced IHSS hours as a result of SB 73 or Defendants' implementation of SB 73." |
| | "All present and future IHSS recipients and applicants who have been or would have been authorized to receive domestic and/or related IHSS, and whose IHSS will be reduced to eliminate some or all of their domestic and/or related services under the provisions of ABX4 4." |
| | "All present or future IHSS recipients who are under the age of 21, who qualify for full-scope Medi–Cal with federal financial participation, and who therefore are entitled to the protections of the Early Periodic Screening Diagnosis and Treatment provisions of the federal Medicaid Act, 42 U.S.C. § 1396a(a), who have been or would have been authorized to receive IHSS, and whose IHSS services will be reduced or terminated under the provisions of ABX4 4." |
| | "All present or future IHSS recipients who are under the age of 21, who qualify for full-scope Medi–Cal with federal financial participation, and who therefore are entitled to the protections of the Early Periodic Screening Diagnosis and Treatment provisions of the federal Medicaid Act, 41 U.S.C. § 1396a(a), who have received or will receive notices of action that include a reduction of IHSS hours based on SB 73 or Defendants' implementation of SB 73, including future applicants for IHSS services whose notice of action will reflect reduced IHSS hours as a result of SB 73 or Defendants' implementation of SB 73." |
| *Maziarz v. Hous. Auth. of Vernon*, 281 F.R.D. 71, 80, 85 (D. Conn. 2012).<br><br>Disabled seniors brought ADA and Fair Housing Act claims against the Town of Vernon's housing authority, alleging that the town discriminated against them by requiring an executed Personal Care Sponsor Agreement. | "All current and former residents of the Housing Authority of the Town of Vernon's senior-disabled housing who were required to certify their ability to live independently and comply with the requirement of the Personal Care Sponsor Agreement as a condition of their tenancy from December 23, 2008 until the present." |