# Exhibit G

IN  THE  UNITED  STATES  DISTRICT  COURT

NORTHERN  DISTRICT  OF  GEORGIA

ATLANTA  DIVISION


BRANDON  COBB,  et  al.,  etc.,

      Plaintiffs,

                          CIVIL  ACTION  FILE

      vs.                      NO.1:19-cv-03285-WMR


GEORGIA  DEPARTMENT  OF
COMMUNITY  SUPERVISION,  et  al.,
etc.,

      Defendants.
~~~~~~~~~~~~~~~~~~~~~~~~~

REMOTE  VIDEOTAPED  DEPOSITION  OF

ERIN  MORIARTY  HARRELSON,  Ph.D.



May  18,  2021

10:22  a.m.



(All  attendees  appeared  remotely  via

videoconferencing  and/or  teleconferencing.)



Joel  P.  Moyer,  CCR  2745



Page 2

```
 1                    APPEARANCES OF COUNSEL

 2    On behalf of the Plaintiffs:

 3        BRITTANY SHRADER, Esquire
          National Association of the Deaf
 4         Law and Advocacy Center
          8630 Fenton Street
 5        Suite 820
          Silver Spring, Maryland 20910
 6        (301) 587-1788
          brittany.shrader@nad.org
 7
          TALILA A. LEWIS, Esquire
 8        PO Box 1160
          Washington, DC 20013
 9        (540) 786-1325
          talila.a.lewis@gmail.com
10
          WEST RESENDES, Esquire
11        American Civil Liberties Union Foundation
          of Georgia, Inc.
12        39 Drumm Street
          San Francisco, California 94111
13        (415) 343-0781
          wresendes@aclu.org
14
      On behalf of the Defendants:
15
          GEORGE M. WEAVER, Esquire
16        Hollberg & Weaver, LLP
          6185 Mountain Brook Way
17        Sandy Springs, Georgia 30328
          (404) 760-1116
18        gweaver@hw-law.com

19

20

21

22

23

24

25
```



1            APPEARANCES OF COUNSEL (cont.)

2

3   Videographer:

4       Tony Wicks

5

6   Interpreters:

7       Sarah Blattberg

8       Jennifer Joy Vold

9       Andrea Smith

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Elizabeth Gallo
COURT REPORTING, LLC

Page 4

```
 1                    INDEX TO EXAMINATIONS

 2    WITNESS:  ERIN MORIARTY HARRELSON, Ph.D.

 3    EXAMINATION                                  PAGE

 4    By Mr. Weaver                                   9

 5    By Mr. Resendes                               108

 6

 7    FURTHER EXAMINATION

 8

 9    By Mr. Weaver                                 128

10    By Mr. Resendes                               137

11

12                       -  -  -

13

14                    INDEX TO EXHIBITS

15    EXHIBITS      DESCRIPTION                    PAGE

16    Exhibit 101  CV of Erin Moriarty Harrelson,   17

17                 Ph.D., April 2021

18

19    Exhibit 102  Report:  Expert Analysis of      27

20                 Communication in Post-Carceral

21                 Settings, 11-2-2020

22

23    (Original Exhibits 101 and 102 have been attached

24    to the original transcript.)

25
```

Elizabeth Gallo
COURT REPORTING, LLC

Page 5

1      Deposition of ERIN MORIARTY HARRELSON, Ph.D.

2                    May 18, 2021

3            THE VIDEOGRAPHER:  We are now on the

4      record.  Today's date is May 18th, 2021, and the

5      time is approximately 10:22.

6                 This will be the remote videotaped

7      deposition of Dr. Moriarty Harrelson.

8                 Will the attorneys please state their

9      names and the parties they represent.

10           MR. RESENDES:  My name is West Resendes

11     for the plaintiffs with the American Civil

12     Liberties Union.

13           MS. SHRADER:  Brittany Shrader also for

14     the plaintiffs with the National Association of the

15     Deaf.

16           MR. WEAVER:  And George Weaver for the

17     defendants here on behalf of the Georgia Attorney

18     General's Office.

19           THE VIDEOGRAPHER:  And will the court

20     reporter please swear our interpreters in followed

21     by the witness.

22         (Whereupon the interpreters were sworn.)

23         (Whereupon the witness was sworn in through

24         the interpreter.)

25           MR. RESENDES:  Before we begin, we do



1  have a few quick notes for the interpreters in this

2  process.

3           First, we do request that both

4  interpreters have their cameras on at all times

5  during the proceedings of the deposition so that

6  we're able to capture any contemporaneous

7  corrections for the record.  And we want to make

8  sure that the record is observable as it is in an

9  in-person proceeding in a courtroom.

10          We are not requiring that we be able to

11  see the interpreter teaming conversation if they

12  need to have a substantive discussion about any

13  particular questions or the overall work product.

14  That could happen in a breakout room off camera

15  from the main event.

16          And we have the additional request that

17  the interpreters be quite clear about exactly who

18  it is who's making a request for a clarification,

19  whether that's coming from the witness or from the

20  interpreter.  We've experienced some confusion

21  about that in previous events, and we want to make

22  sure that those issues are as clear as possible

23  because they have caused confusion.

24          We'd also like to put on the record

25  that we will be waiving our voir dire of these two



Page 7

1    interpreters today because they've both been

2    personally approved by our witness and that we

3    understand that both of them are highly

4    experienced, well respected, certified, and

5    qualified interpreters.

6              George, did you want to do any sort of

7    voir dire of these two interpreters, or would you

8    like to waive that as well?

9              MR. WEAVER:  No.

10             MR. RESENDES:  Well, so then all of the

11   lawyers have agreed to proceed with this team of

12   interpreters, Sara and Jen.  We do preserve any

13   other right at any time to work on correcting any

14   other interpreter errors that may occur, and we

15   will see those and proceed with our objections.

16             All right.  I believe that's all I

17   have.  Please go ahead.

18             MR. WEAVER:  Okay.  And just so I know,

19   who was the speaker in the last segment?

20             MR. RESENDES:  That was me speaking.

21   This is West through my voice interpreter.

22             MR. WEAVER:  I know, but the

23   interpreter.  Okay.  Well, who was doing the voice?

24             MR. RESENDES:  Andrea Smith is my

25   interpreter.

Elizabeth Gallo
COURT REPORTING, LLC

```
 1                    MR. WEAVER:  Okay.  All right.  That's
 2     fine.
 3                    So are you going to be defending the
 4     deposition, West?
 5                    MR. RESENDES:  Yes, that's correct.
 6                    MR. WEAVER:  Okay.  Okay.  I just
 7     wanted to make sure who the players are.
 8                    I apologize we're starting late.  I had
 9     an email yesterday at 9:46 a.m. that had a
10     different meeting code and password, and I was
11     waiting for 20 minutes, and I was in the wrong
12     place, so sorry.
13                    Does the witness want to read and sign
14     her deposition --
15                    MR. RESENDES:  Sorry.  Happy you're
16     okay and that it's not a major problem with your
17     Internet or anything like that.  So, yes, please
18     feel free to proceed.
19                    MR. WEAVER:  Does the witness want to
20     read and sign her deposition?
21                    INTERPRETER VOLD:  Could you repeat
22     that?
23                    MR. WEAVER:  Does the witness want to
24     read and sign the transcript of her deposition?
25                    MR. RESENDES:  Yes.  I will want the
```

Page 9

1  opportunity to read and sign the transcript and

2  offer any corrections --

3          MR. WEAVER:  Okay.  All right.

4          MR. RESENDES:  -- if necessary.

5          ERIN MORIARTY HARRELSON, Ph.D.,

6  having been first duly sworn, was examined and

7  testified as follows:

8                      EXAMINATION

9  BY MR. WEAVER:

10      Q    And, Dr. Moriarty Harrelson, I'm George

11  Weaver, here as a special assistant attorney

12  general representing the defendants in this case.

13  I don't think we've met before.

14      A    Nice to meet you, Mr. Weaver.

15      Q    Okay.  Both yesterday and back in

16  December of last year, we served a Notice of

17  Deposition that requested certain materials if you

18  have anything that's covered by the notice.

19          Did you bring anything with you today

20  to produce to me or to the defendants?

21      A    No.

22      Q    Okay.  Let me just take a look at the

23  questions here.

24          MR. RESENDES:  While you're looking at

25  that, Joel, would you mind going off camera for the



1        A      I think maybe about 20 years ago I did

2    a -- a survey in the state of Iowa that included

3    questions about communication accommodations, but

4    that was more than 20 years ago.

5        **Q      Is that before the ADA went into**

6    **effect?**

7        A      I'm not that old.

8        **Q      Well, the ADA went into effect in 1990,**

9    **so that would be 30 years ago.  So I guess it was**

10   **after that; correct?**

11       A      Correct.

12       **Q      Okay.  Have you done an assessment of**

13   **communication accommodations provided by any other**

14   **government agency in the United States besides the**

15   **defendant agency in this case, the Georgia**

16   **Department of Community Supervision?**

17       A      No.

18              MR. WEAVER:  Okay.  I think that's all

19   I have at this time.

20              MR. RESENDES:  All right.  Excellent.

21   Is it possible then for us to take about a

22   15-minute break before I do my redirect?

23              MR. WEAVER:  Okay.  And who's going to

24   do the redirect?  West?

25              MR. RESENDES:  I will be doing the



Elizabeth Gallo
COURT REPORTING, LLC

Page 108
1   redirect, yes.

2                MR. WEAVER:  Okay.  All right.  That's

3   fine.  So 15 minutes, so back at 4:15 give or take?

4                MR. RESENDES:  Sounds good.

5                MR. WEAVER:  Okay.  All right.  Thank

6   you.

7                THE VIDEOGRAPHER:  Okay.  Going off the

8   record at 3:58.

9        (Proceedings in recess, 3:58 p.m. to

10       4:22 p.m.)

11               THE VIDEOGRAPHER:  Going back on the

12  record at 4:22.

13               MR. RESENDES:  Thank you.

14                    EXAMINATION

15  BY MR. RESENDES:

16       Q    Dr. Moriarty Harrelson, let's talk

17  about communication assessments for a moment.

18               In your opinion, throughout the report,

19  you note that there are some deaf people who need

20  communication assessments.  Have you performed

21  communication assessments for creating this report?

22       A    No, I did not perform communications

23  assessments for this report.  Communications

24  assessments usually include things like audio

25  exams, literacy assessments, lip reading abilities,



1    cognitive tests, signing proficiency.  And that was

2    not part of my work for this.

3            I focused more on documenting what

4    tools and modalities of communications I saw being

5    used in the videos.  I also compared what I saw in

6    the videos with what I read in the case notes.  So

7    I -- again, I looked more at the overall picture, a

8    more holistic process.

9        **Q       Throughout Mr. Weaver's questions**

10   **today, he asked you if you agreed that each deaf**

11   **person will have individualized needs in terms of**

12   **auxiliary aids and services.  Do you remember being**

13   **asked those questions?**

14       A       I do.  About four hours ago.

15       **Q       What is the best way to ensure that DCS**

16   **can determine -- the defendant could determine that**

17   **for any deaf individual under supervision they**

18   **receive the appropriate auxiliary aids and**

19   **services?**

20       A       I think the best way to determine that

21   would be to have a specialist to do a communication

22   assessment.  That way, you can actually ascertain

23   what services each deaf individual is best suited

24   to.  And each individual might end up having their

25   own unique results, but the test itself would be



Page 110

1   more standardized.

2           That way, you could figure out who

3   wants an interpreter or who needs an interpreter as

4   opposed to a person who needs to work with a

5   certified deaf interpreter, as an example among the

6   range of accommodations.

7       **Q       How would you describe most of the**

8   **interactions that you observed throughout the**

9   **videos that you watched?**

10      A       In -- actually, please let me -- I'm

11  unsure when to start because I actually can't see

12  if the voice interpreter interpreting Mr. Resendes

13  is done now, so please let me know if I'm cutting

14  off the voice interpreter.  Please let me know.

15  Shall I continue?

16          Thank you, Sarah, for cueing me on

17  that.

18          Okay.  Let me re-read your question.

19          Okay.  So in some videos, it was

20  clearly routine.  Like you could see that the

21  officer was reading from a form of questions, or

22  you could see them hand the form over that had the

23  list of questions on it to the deaf client.

24          So in some of those situations, you

25  could see that there were more routine


Elizabeth Gallo
COURT REPORTING, LLC

Page 111

1   interactions, but you could also see that some are

2   quite unexpected.  So, for example, there was one

3   dialogue in which the officer asked the deaf

4   customer or client, rather, are you enjoying the

5   festivities?

6                Not in a typical -- well, maybe that's

7   why that communication breakdown happened, because

8   the deaf consumer was not expecting that vocabulary

9   word.  He might have been expecting to see

10  something like Christmas and could have read --

11  could have lip read the word "Christmas" versus

12  festivities, because it is so different than what

13  he might have been expecting.

14               Often lip reading is a matter of -- is

15  a series of guesses and trying to predict what is

16  used.

17       **Q       So for those unexpected events, those**

18  **occurred during something that is a regular**

19  **interaction; right?**

20       A       Right.  That's what happened with the

21  festivities situation.  It was supposed to be a

22  routine interaction, but I think that the officer

23  perhaps wanted to make a personal connection.  But

24  the question was so unexpected that that's where

25  you could clearly see that the deaf client didn't


Elizabeth Gallo
COURT REPORTING, LLC

Page 112

1    understand.

2              And he said, I'm sorry.  Could you

3    repeat yourself?  So that was a prompt for the

4    officer to repeat themselves.

5              And then the next part of that

6    interaction -- in the next part of that

7    interaction, you could see that the deaf person

8    laughed and chuckled, which is often an indication

9    of someone being uncomfortable or just laughing out

10   of wanting to move things along.

11        Q    So would speech reading or lip reading,

12   as others understand it, alone have provided a deaf

13   person who -- with no ability to hear spoken

14   English sufficient information to understand these

15   interactions that you observed?

16        A    No.

17        Q    All right.  I have a quick question

18   about a TTY then.  Just because someone types on a

19   TTY, it doesn't mean that they were able to

20   communicate effectively with their communicative

21   partner; right?

22              MR. WEAVER:  Objection.  Leading.

23   BY MR. RESENDES:

24        Q    I'll rephrase my question.  If somebody

25   is typing on a TTY, does that mean that



Page 141

1    STATE OF GEORGIA:

2    COUNTY OF FULTON:

3

4         I hereby certify that the foregoing

5         transcript was reported, as stated in the

6         caption, and the questions and answers

7         thereto were reduced to typewriting under my

8         direction; that the foregoing pages represent

9         a true, complete and correct transcript of

10        the evidence given upon said hearing, and I

11        further certify that I am not of kin or

12        counsel to the parties in the case; am not in

13        the employ of counsel for any of said

14        parties; nor am I in any way interested in

15        the result of said case.

16

17

18

19

20

21

22        _____

23        Joel P. Moyer, CCR 2745

24

25



Page 142

1                    DISCLOSURE OF NO CONTRACT

2           I, Joel P. Moyer, Certified Court
   Reporter, do hereby disclose pursuant to
3  Article 10.B. of the Rules and Regulations of the
   Board of Court Reporting of the Judicial Council of
4  Georgia that I am a Georgia Certified Court
   Reporter; I was contacted by the party taking the
5  deposition to provide court reporting services of
   this deposition; I will not be taking this
6  deposition under any contract that is prohibited by
   O.C.G.A. 15-14-27(a) and (b) or Article 7.C. Of the
7  Rules and Regulations of the Board; and I am not
   disqualified for a relationship of interest under
8  O.C.G.A. 9-11-28(c).

9           There is no contract to provide reporting
   services between myself or any person with whom I
10 have a principal and agency relationship nor any
   attorney at law in this action, party to this
11 action, party having a financial interest in this
   action, or agent for an attorney at law in this
12 action, party to this action, or party having a
   financial interest in this action.  Any and all
13 financial arrangements beyond my usual and
   customary rates have been disclosed and offered to
14 all parties.

15          This 2nd day of June 2021.

16

17

18

19

20

21          --------------------------

22          Joel P. Moyer, CCR 2745

23          Elizabeth Gallo Court Reporting LLC

24

25



Page 143

1    CASE:  Brandon Cobb, et al. vs Georgia Dept. of Community Supervision, et al.

2    NAME OF WITNESS:    Erin Moriarty Harrelson, Ph.D.

3       The preceding deposition was taken

4    in the matter, on the date and at the time and

5    place set out on the title page hereof.

6       It was requested that the deposition

7    be taken by the reporter and that same be

8    reduced to typewritten form.

9       It was agreed by and between counsel

10   and the parties that the deponent will read and

11   sign the transcript of said deposition. Said jurat

12   is to be returned, within 30 days after the transcript

13   is made available, to the following address:

14             Elizabeth Gallo Court Reporting, LLC

15             2900 Chamblee Tucker Road

16             Building 13, First Floor

17             Atlanta, Georgia 30341

18   If an errata is executed and returned

19   to EGCR within the 30 days allocated by law,

20   the executed errata will be sent to the taking

21   attorney for filing with the original transcript.

22   Should an executed errata not be forwarded from

23   EGCR to the taking attorney for filing, the

24   deposition was not reviewed and signed by the

25   deponent within 30 days.



Page 144

1   NAME OF CASE:      Brandon Cobb, et al. vs Georgia Dept. of Community Supervision, et al.
    DATE OF DEPOSITION: 05/18/2021
2   NAME OF WITNESS:   Erin Moriarty Harrelson, Ph.D.

3   EGCR JOB NO.:       76700

4                  CERTIFICATE

5        Before me this day personally
    appeared ERIN MORIARTY HARRELSON, PH.D., who, being duly
6   sworn, states that the foregoing transcript of
    his/her deposition, taken in the matter, on
7   the date and at the time and place set out on
    the title page hereof, constitutes a true and
8   accurate transcript of said deposition.

9                    _____

10                      ERIN MORIARTY HARRELSON, PH.D.

11        SUBSCRIBED and SWORN to before me

12   this _____ day of _____ 20___.

13   in the jurisdiction aforesaid.

14
    _____      _____
15   My Commission Expires      Notary Public

16     STATE OF _____

17     COUNTY/CITY OF _____

18

19     []   No changes made to the Errata Sheet;

20   therefore, I am returning only this signed,

21   notarized certificate.

22     []   I am returning this signed,

23   notarized certificate and Errata Sheet with

24   changes noted.

25

**Elizabeth Gallo**
COURT REPORTING, LLC

Page 145

1           Errata Sheet

2   NAME OF CASE:     Brandon Cobb, et al. vs Georgia Dept. of Community Supervision, et al.

3   DATE OF DEPOSITION: 05/18/2021

4   NAME OF WITNESS:   Erin Moriarty Harrelson, Ph.D.

5   Reason Codes:  1. To clarify the record

6                  2. To correct transcription errors

7                  3. Other

    _____
8   _____

9   Page _____ Line _____ Reason _____

10  From _____ to _____

11  Page _____ Line _____ Reason _____

12  From _____ to _____

13  Page _____ Line _____ Reason _____

14  From _____ to _____

15  Page _____ Line _____ Reason _____

16  From _____ to _____

17  Page _____ Line _____ Reason _____

18  From _____ to _____

19  Page _____ Line _____ Reason _____

20  From _____ to _____

21  Page _____ Line _____ Reason _____

22  From _____ to _____

23

24   SIGNATURE:_____DATE:_____

25           Erin Moriarty Harrelson, Ph.D.

Page 146

1               Errata Sheet

2   NAME OF CASE:      Brandon Cobb, et al. vs Georgia Dept. of Community Supervision, et al.

3   DATE OF DEPOSITION: 05/18/2021

4   NAME OF WITNESS:   Erin Moriarty Harrelson, Ph.D.

5   Reason Codes:  1. To clarify the record

6                  2. To correct transcription errors

7                  3. Other

8   _____
    _____

9   Page _____ Line _____ Reason _____

10  From _____ to _____

11  Page _____ Line _____ Reason _____

12  From _____ to _____

13  Page _____ Line _____ Reason _____

14  From _____ to _____

15  Page _____ Line _____ Reason _____

16  From _____ to _____

17  Page _____ Line _____ Reason _____

18  From _____ to _____

19  Page _____ Line _____ Reason _____

20  From _____ to _____

21  Page _____ Line _____ Reason _____

22  From _____ to _____

23

24   SIGNATURE:_____DATE:_____

25              Erin Moriarty Harrelson, Ph.D.