# Exhibit P

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| BRANDON COBB, JOSEPH NETTLES, and MARY HILL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GEORGIA DEPARTMENT OF COMMUNITY SUPERVISION, and MICHAEL NAIL, in his official capacity as Commissioner of the Georgia Department of Community Supervision,<br><br>Defendants. | Civil Action No.<br>1:19-cv-03285-WMR<br><br>**<u>CLASS ACTION</u>** |

**<u>SUPPLEMENTARY DECLARATION OF JOSEPH NETTLES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

1. This paper describes things that have happened to me personally. Everything in this paper happened to me. I promise that everything written here is true and correct. In some places, I say that I believe something is true. That means that I believe that fact is true, but I cannot promise that it is true. I know that I might be a witness in this case, and that I might be asked to explain these facts in person. If this happens, I will say the same things that are written in this paper.

2.      I signed a paper like this, called a "declaration" on June 29, 2019. Everything in that paper was true when I signed it. This paper adds more information. This paper talks about what has changed since June 2019.

*Deaf Interpreters*

3.      In August 2020, I used a Deaf Interpreter (DI) for the first time. It was incredible how much better communication was with a DI compared to the other times I had to rely on a hearing interpreter. The DI was able to match my language better. I understood the hearing people I was communicating with more clearly.

4.      I have used DIs many times since August 2020, and they have made communication significantly better and easier for me. If I had a DI during my interactions with my parole officer or other people in GDCS, I would be more sure that I understood everything. Each interaction has the possibility of me having to go back to prison because Officer Worley or another probation officer can decide to send me back anytime. Now that I have worked with Deaf interpreters, I know that I need Deaf interpreters to understand important information.

*Communication with Officer Worley*

5.      Around November 2019, Officer Worley started using VRI during his visits to my home. This was more communication than I had before when Officer Worley did not use VRI, but still not full communication.

6.      There have been problems with VRI during Officer Worley's visits. The VRI screen image is often blurry and pixelated, so it can be hard to see the VRI interpreter clearly. It

is very important for the video quality to be as clear and perfect as possible for ASL. If the video is blurry, it is hard to understand ASL signs and communication is not possible.

7. Sometimes the video image is clear but the interpreters are not clear with their signing. This is because their ASL skills are not good enough. Many of the VRI interpreters seem to be not qualified to be professional interpreters. My son has overheard the VRI interpreters saying different things than I have signed, so I don't think the VRI interpreters always understand me. I notice also that Officer Worley often responds to things I did not sign. I think he thinks VRI is working, but we do not really have effective communication and there are many miscommunications. This is another example of how I know that the VRI interpreters do not always understand me. I can count one or two times where communication went really well with VRI. All the other times, communication has been difficult or impossible

8. At the start of July 2020, Officer Worley came and the VRI was not working. He left and I didn't know if he was going to come back. He ended up coming back on July 20 and the VRI was working. It was stressful for me because I went almost 3 weeks wondering if he was going to come back for my monthly check-in. I wanted to be sure I got credit for my check-in.

9. I wish Worley used a live Deaf interpreter who would be there in person with him when we meet. ASL is a 3-D, interactive language that is best understood in person. Deaf interpreters can understand me more clearly than VRI interpreters. CDIs are good at making things clear for me – hearing VRI interpreters struggle to make the point clearly for me. Deaf interpreters who are there in person can also see things in the room that Officer Worley talks about and read papers to me when VRI interpreters cannot. I can also see if Deaf interpreters are

interpreting accurately for me when they interpret for me, but I have no idea if VRI interpreters are able to voice accurately what I said.

10. Officer Worley still texts me. This is stressful as English is not my language. I can read and write some simple words and sentences written in English, but I do not understand many words in English. I often have to ask other people to try to help me understand his texts if they are complicated – but it is still hard to get clarification from hearing people who don't know ASL.

*Halloween 2020*

11. Every year, I usually have to go to the PO office during Halloween and stay outside in a special area. It is always a very isolating experience because everyone would talk to each other and I would sit alone until it was time to go. In October 2020, I asked Officer Worley for an exemption – I wanted to stay home, so I texted him to ask. He said he would look into it. Officer Worley come to my home and said that my request was approved. He explained a form he had about Halloween through VRI, and the VRI interpreter interpreted. I don't know if Officer Worley read every line of the Halloween form. He told me a few rules, like lights off, stay home, no giving out candy, Halloween decorations were not permitted, then told me to sign the paper. I asked him to repeat things several times because I didn't understand everything in detail. I asked Officer Worley if I could take a picture of the form, and he said that it was not possible. I needed a copy of the form because I can't read and I still did not fully understand it. I wanted someone to help me understand the form later by interpreting it into ASL with a CDI. I

-4-

don't know why it was not possible to take a photo. I usually never get a copy of the forms I have to sign for GDCS.

12.    Shortly before October 25, 2020, Officer Worley handed me a copy of the form. I met with my lawyers and they hired a Certified Deaf Interpreter (CDI) for a separate meeting where I could review the form. The CDI translated the form from English to ASL for me. It was the first time I fully understood the form, because the CDI signed everything that was on the form in a way that I could understand.

13.    I had several new questions after the CDI translated the form. This was because I did not understand everything that the VRI interpreter was signing when Officer Worley summarized the form to me. I thought I understood the form pretty well before but that was because the VRI interpreter seems to not have explained the form to me clearly or fully. After the meeting with the CDI, I had questions I did not know I had when the form was translated through VRI. I wanted to know what the "GBI" letters meant and why Officer Worley was talking to GBI. I wanted to know where I was supposed to "report to" for Halloween—to Officer Worley or to the probation office. I was confused by the dates on the form. The form said that I was supposed to stay home from Thursday night, October 29, through Friday morning, October 30. It did not say anything about Halloween Day.

14.    That year, my county celebrated Halloween on Thursday October 29, 2020. On October 29, 2020, two GDCS officers—Officer Nettles and Cruz—came to my home at 7:04 p.m. They had a form with the "GBI" letters on it but I did not know what it was. They brought a laptop connected to VRI and used it at the start of the visit. However, Officer Nettles turned the laptop screen away from me so I was not able to see the interpreter on the screen. I tried to turn

the laptop back, and Officer Cruz put her hand on her weapon. Both had no idea about VRI or how it worked – so they turned the laptop away, not knowing that I needed to see the interpreter to be able to communicate. Cruz became defensive, and thought I would do something. I tried to adjust the angle of the laptop screen so the camera could see me clearly and so I could see the VRI interpreter clearly. But, the VRI video image was blurry that night, and the interpreter was pixelated.  This made me very uncomfortable as I did not have the ability to communicate with the officers, and it made me feel unsafe. At some point, they turned the screen back. Officer Nettles did most of the talking, and she was talking about the GBI paperwork. Officer Cruz did some talking, which made it hard for the VRI interpreter to interpret for both of them. I remember the form saying that someone from GBI would watch my house overnight. I had no idea they would walk into my home. It was very jarring and unexpected. I was very confused why they were here and not Officer Worley.

*ADA Coordinator Letter*

15. Sometime in late January 2021, Officer Worley came to my home at night. I asked Officer Worley for a hearing-deaf interpreting team in person for all probation visits. Officer Worley said he would talk to a supervisor.

16. On February 4, 2021, Officer Worley came back to my home late at night – I was already in bed. He brought his laptop and set it up on the counter – it took 3-4 minutes for the VRI interpreter to sign on. Officer Worley spoke to the VRI interpreter for 1-2 minutes before he started talking to me—I didn't know why they were talking to each other without me. He showed me the letter and told me that HR denied my request for live interpreters. I tried to explain that

VRI didn't work for me. Officer Worley said that I would be fine with VRI and he mentioned a "safety concern" in the letter but I do not know what that means. Officer Worley only summarized the letter for the VRI interpreter to translate to me—he did not read aloud the complete letter. I didn't get a complete interpretation of the letter in ASL.

17. We then talked about other things. The VRI interpreter kept asking me to repeat myself because the interpreter couldn't understand me. The interpreter used sign language that was more focused on English than ASL, and it was hard for me to understand the interpreter. I wish I had a Deaf interpreter to make communication possible.

18. I met with my lawyers after I got the HR letter. They hired a Certified Deaf Interpreter. The CDI interpreted the letter to me. It was the first time I understood most of the letter. After that meeting with CDIs I had questions that I did not know to ask after the VRI meeting because the communication was clear with the CDI. I wanted to know what these specific words in the letter meant: "field interaction," "specific," and "agency." If Worley had read the whole letter with a Deaf interpreter, I would have understood the form the first time. I cannot always rely on my lawyers to provide a CDI to help me understand letters and forms from GDCS. It should be GDCS' responsibility to make sure that I can understand their forms and letters.

*Probation Rules & Term*

19. I still worry every day about not following the rules. I worry about something happening and me going back to prison. I worry so much about this.

20. In June 2019, I believed I would be on probation until 2021. Now, I believe it will end on September 5, 2021. I think I remember signing a form on September 6, 2011 saying that I would be done in September 2021 after 10 years of probation. But I am not fully sure – I understand that when I finish, I will get a certificate or some paper to say that I finish my probation. I worry that it could be a trick and I will be stuck on probation longer.

I promise that everything in this paper is true and correct. I know that this is a serious paper. I know that I am signing this paper "under penalty of perjury." This means that if I lie, I could get a new criminal charge against me for lying. I promise I am telling the truth.

This paper was translated into ASL for me by Amy Peterson and Robin Shannon, Certified Deaf Interpreters. I electronically signed this paper on June 17, 2021 in Hoboken, Georgia.

/s/ *Joseph Nettles*
Joseph Nettles
Plaintiff