# Exhibit V

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRANDON COBB, et al., etc.,
    Plaintiffs,

                                        CIVIL ACTION FILE
      vs.                          NO. 1:19-cv-03285-WMR

GEORGIA DEPARTMENT OF
COMMUNITY SUPERVISION, et al., etc.,
    Defendants.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

REMOTE VIDEOTAPED DEPOSITION OF
JUDY A. SHEPARD-KEGL, Ph.D.
VOLUME II

August 11, 2021
10:06 a.m.

(All attendees appeared remotely via
videoconferencing and/or teleconferencing.)

Michelle S. Schreadley, CCR B-1504



Page 262

```
 1                    APPEARANCES OF COUNSEL

 2   On Behalf of the Plaintiffs:

 3            BRITTANY SHRADER, Esquire
              National Association of the Deaf Law
 4              and Advocacy Center
              Suite 820
 5            8630 Fenton Street
              Silver Spring, Maryland 20910
 6            301.587.1788
              brittany.shrader@nad.org
 7
     On Behalf of the Defendants:
 8
              GEORGE M. WEAVER, Esquire
 9            Hollberg & Weaver, LLP
              6185 Mountain Brook Way
10            Sandy Springs, Georgia 30328
              404.760.1116
11            gweaver@hw-law.com

12   ALSO PRESENT:

13            Matt Bosley, Videographer

14

15

16

17

18

19

20

21

22

23

24

25
```



Page 263

1                    INDEX TO PROCEEDINGS

2                     EXAMINATION INDEX

3    JUDY A. SHEPARD-KEGL, Ph.D.

4    Examination by Mr. Weaver                        267
     Examination by Ms. Shrader                       372
5    Re-Examination by Mr. Weaver                      394
     Re-Examination by Ms. Shrader                     406
6    Further Examination by Mr. Weaver                 408

7    _____

8                       EXHIBIT INDEX

9
     Exhibits
10
      123     Notice by Defendants of Depositions     268
11
      124     Addendum to Expert Report of Drs. Judy  269
12            Shepard-Kegl and Amy June Rowley

13   (Exhibits 123 and 124 have been attached to the
     original transcript.)
14
     (End of Index)
15

16

17

18

19

20

21

22

23

24

25

Page 264

```
 1              DEPOSIITON OF JUDY A. SHEPARD-KEGL, Ph.D.

 2              August 11, 2021

 3              THE VIDEOGRAPHER:  We are on the

 4   record.  Today's date is August 11, 2021, and the

 5   time is approximately 10:06 a.m.  This will be the

 6   remote videotaped deposition of Dr. Judy

 7   Shepard-Kegl.  Will the attorneys present please

 8   state their names and who they represent.

 9              MS. SHRADER:  Brittany Shrader with the

10   National Association of the Deaf representing the

11   Plaintiffs in this case.

12              MR. WEAVER:  George Weaver on behalf of

13   the Georgia Attorney General's Office representing

14   the Defendants.

15              THE VIDEOGRAPHER:  And will the court

16   reporter please swear in the witness.

17              THE COURT REPORTER:  Yes.  Before I do

18   that, if I could have everyone state whether

19   there's anyone else in the room with them.

20   Brittany?

21              MS. SHRADER:  At this time it's just

22   myself and the witness.

23              THE COURT REPORTER:  And Mr. Weaver?

24              MS. SHRADER:  And just to be clear,

25   physically present, Judy Shepard-Kegl and I are in
```



Page 265

1   different locations.

2              MR. WEAVER:  And I'm by myself in my

3   home, sitting on the sun porch.

4              THE COURT REPORTER:  And

5   Dr. Shepard-Kegl?

6              THE WITNESS:  I'm by myself in my home

7   office with the door closed.

8              THE COURT REPORTER:  Can I have -- I'm

9   sorry.  What was that?

10             THE WITNESS:  I said not on my nice

11  sunny porch.  My ducks are too loud.

12             THE COURT REPORTER:  Can I have the

13  attorneys confirm that they agree to take this

14  deposition remotely and to have the witness sworn

15  remotely.

16             MS. SHRADER:  Yes.  No objection.

17             MR. WEAVER:  Agreed on behalf of the

18  Defendants.

19        (Whereupon the witness was duly sworn.)

20             MS. SHRADER:  And just as a

21  housekeeping matter for the record, today's

22  deposition is a supplemental deposition.

23  Dr. Shepard-Kegl was deposed previously in this

24  case.

25             There has been a newly added Plaintiff


Elizabeth Gallo
COURT REPORTING, LLC

1          **Is that something that persons with**

2  **Usher syndrome can fix using corrective lenses?**

3          MR. WEAVER:  Objection.  Calls for

4  speculation.  Beyond her expertise.

5      A      Well, first, my knowledge -- you know,

6  I do have to learn about Usher syndrome as part of

7  my work as an interpreter.  But Usher syndrome --

8  first of all, the first thing to know is that

9  people with Usher syndrome -- you know, I -- my

10  glasses are -- you know, my correction is huge.  If

11  I take my glasses off, I can't see anything.  If I

12  put them on, I can still get within the 20/20

13  range, so I'm not legally blind.

14          But a deaf person who has Usher

15  syndrome has got -- you know, retinitis pigmentosa

16  or tunnel vision is what they have plus deafness.

17  Right?  But someone with tunnel vision can have

18  20/20 vision.  So they can have visual acuity in

19  that little space that they can see.

20          So you wouldn't be wearing corrective

21  lenses for short-sightedness or far-sightedness.

22  You know, you might have both, but the odds are

23  you've probably got 20/20 vision and you've just

24  got restricted visual field.

25          There is -- it's not used much at all,



Page 387

1  but some people with Usher who have very, very

2  restrictive vision, which she doesn't have yet, or

3  super restrictive, there are glasses that function

4  like a fish-eye lens.  It distorts things a bit,

5  but you can see a bit of a wider view than you

6  normally would.

7                    But typically, a person with Usher

8  syndrome will not be wearing corrective lenses.

9         Q       Mr. Weaver, before the break, told you

10  that there were two paragraphs that -- in that

11  Consent Order that the supervising probation

12  officer did not read aloud to Ms. Hill with the

13  interpreter.

14                    Do you recall Mr. Weaver indicating

15  that to you?

16         A       I recall that.  And I'm curious what

17  the two paragraphs were.

18         Q       Okay.  So I'm going to pull up for you

19  the Consent Order, which is marked in a prior

20  deposition as Exhibit 116.  I'm going to put that

21  on the screen in just a moment.  Let me see if I

22  can make that a little bit larger.

23         A       Okay.  So --

24         Q       Okay.  Is that, is that clear on the

25  screen?

Page 388

```
1      A      Yes.
2      Q      Okay.  So I'm going to scroll down, and
3   I'm going to let you know that Officer Roper
4   testified that it was paragraphs 4 and 5 that he
5   did not read to Ms. Hill with an interpreter.  So
6   I'll give you a moment to take a look at the two
7   paragraphs.
8      A      Did he require her to read this?
9      Q      Officer Roper testified that the
10   situation was so chaotic that he forgot to read
11   them to her and just after telling her --
12   concluding paragraph 3, he asked her to sign the
13   document.
14      A      Those are two of the most obtuse
15   paragraphs in the materials that I looked at.  And
16   given that she said she didn't understand about the
17   rights she was giving up and her entitlements, to
18   not share those via an interpreter or to share them
19   only by writing I think was missing what, what she
20   was saying she didn't understand about the
21   information here.
22      Q      And just to clarify for you, Officer
23   Roper indicated that he read to her paragraphs 1,
24   2, and 3 of this form and then asked her to sign
25   the document.  So if you just will take a look at
```



Elizabeth Gallo
COURT REPORTING, LLC

Page 389

1  paragraphs 1, 2, and 3 quickly, and then I'm going

2  to have some questions.  And I know you just looked

3  at 4 and 5.  I'm going to have some questions for

4  you.

5       A     All right.  So 3, can you go up to 3?

6  So I have 3 in front of me here.  If he read them

7  aloud -- I mean, I don't know if he did that.  If

8  he read them aloud and the interpreter was supposed

9  to interpret this, I would say, if it seems like

10  the interpreter was actually successfully doing it

11  in realtime while he was reading it, I would be

12  suspicious about the interpretation provided

13  because this would involve a lot of -- it should be

14  done as sight translation.

15            You know, if he read it, if he read it

16  and he summarized what it was saying, that may have

17  been interpreted in realtime.  I don't know exactly

18  the conditions of what happened.

19            But, you know, "There being sufficient

20  evidence of Defendant's failure to comply with the

21  terms of his/her probation, it is therefore ordered

22  and adjudged that the probation provisions," that

23  information, you know, would have to -- an

24  interpreter would need time.

25            It would have to be a consecutive



Page 390

1  interpretation.  They should probably have access

2  to what's being written.  You know, I would not be

3  interpreting that on the fly as the officer read

4  it.  So I would want to know what he meant by "read

5  her" these things.

6      **Q      So I have some questions about some of**

7  **the things you just said.  You said that this**

8  **should be a sight translation.  What does that**

9  **mean?**

10      A      A sight translation is where you give

11  the interpreter the written document.  You stay

12  there with the interpreter.  The interpreter reads

13  it, unpacks it, reorganizes it for interpretation,

14  and puts it out there, was able to ask you to

15  explain pieces or to, you know, expand on things.

16              This is not -- if somebody just started

17  reading this and said interpret, as a legal

18  interpreter, I would go, no.  This needs to be done

19  with sight translation.

20              It's like the Miranda.  You know, if a

21  police officer says, I've got to read you the

22  Miranda and they just glance through it, I will

23  say, I need to -- you know, okay, I've memorized

24  it, so I can do it.  But I need to unpack this

25  document in order to translate this document in



1  order to interpret it into sign language for this

2  person.

3              This is very, you know, obtuse language

4  for an interpreter to go simultaneously on the fly

5  from.  So sight translation is you look at the

6  written document and you unpack it and then you put

7  it out in sign language.

8      **Q      And is sight interpretation something**

9  **that is typically done through VRI?**

10     A      It can be if there's a way to get the

11 written document to the person.

12     **Q      And if the written document is not**

13 **provided to the interpreter, what does that do to**

14 **the quality of interpretation in your expert**

15 **opinion?**

16     A      I think if somebody were just reading

17 this, I would have to go practically in a sentence

18 by sentence here.  I would want them to read me the

19 whole paragraph.  It would take me quite some time.

20 I would ask a lot of questions.  I would reorganize

21 it.

22             I think, you know, if that wasn't

23 happening, then I would be very suspect of the

24 quality of the interpretation.  I would want to see

25 the document.  You know, in typical, I would say --

Elizabeth Gallo
COURT REPORTING, LLC

1   I might -- you know, what I might say is, can you

2   summarize for this person what this document says

3   and put it into plain English, and I'll interpret

4   that.

5            And then I would probably make a note

6   on the document, this was summarized by the

7   officer.  But to say that it was read, I think is,

8   is weird, problematic.

9            And the two that are remaining, those

10  two paragraphs that weren't read, I mean, just look

11  at the first sentence there.  Almost every other

12  word in that sentence are things that she's not --

13  I mean, affixing, maybe document.  She won't have

14  acknowledging, entitled.  She'll know formal but

15  not in the terms of formal action or formal

16  revocation.  She won't know revocation, you know,

17  sentencing Court.

18           You know, said hearing, she's going to

19  know "said," and it's going to throw her because

20  she's got one meaning of "said," but it doesn't fit

21  here.  These could not have been read by her.

22           So if she signed this document without

23  knowing what the contents of it -- really willingly

24  admit -- if she signed this document without

25  knowing the contents of 4 and 5, she was signing a

Page 393

1 document she didn't understand, even if everything

2 else was understood, which I doubt if he actually

3 read that paragraph to her.

4       **Q       So in your opinion, even if given**

5 **unlimited time, would Ms. Hill have been able to**

6 **unpack paragraphs 4 and 5 without an interpreter?**

7       A       No.

8       **Q       Earlier today you testified that a**

9 **native user of ASL is a person who has been exposed**

10 **to ASL from birth.  Is that the majority of deaf**

11 **people?**

12       A       No.  It's only about six to ten percent

13 of the population of deaf in the United States.

14 It's different, different in other countries.  Some

15 have even less.  But six to ten percent of the deaf

16 population in the United States are deaf children

17 born to parents who are deaf and use sign language.

18             So the bulk, the majority, 90 percent

19 or more of the population are born to families that

20 don't sign.

21       **Q       Dr. Shepard-Kegl, having taken a look**

22 **at Exhibit 116, the Consent Order, in your expert**

23 **opinion, what should have been done to ensure an**

24 **adequate interpretation of that document?**

25       A       Is 116 both what I have in my report as



Page 394

1 document 1 and document 2, or is it just document

2 2?

3 **Q      That's the Consent Order that we were**

4 **just looking at.**

5 A      Okay.  I think that it, it needed to be

6 done via sight translation with input from the

7 person providing the document, explaining the --

8 explaining it so the interpreter understood fully

9 what was going on here.  But definitely it should

10 have been sight translated, should have been

11 unpacked, and should have taken quite a bit of

12 time.

13           You said it was a 22-minute meeting

14 with the parole officer?  I could not translate

15 this, what I have here as document 2, Superior

16 Court of Forsyth County Consent Order, I could not

17 have sight translated that order in 22 minutes.

18           MS. SHRADER:  I don't have anything

19 further at this point.

20 RE-EXAMINATION

21 BY MR. WEAVER:

22 **Q      Just a couple of follow-up, Doctor.  In**

23 **your responses to questions from Ms. Shrader, you**

24 **said that even though you haven't seen the body cam**

25 **video of meetings with Ms. Hill and the probation**



Page 395

1  officer, or CSO, community supervision officer,

2  even though you haven't seen them, you understand

3  that on the particular date where Ms. Hill was

4  presented with that Consent Order and asked to sign

5  it, she was on one side of a glass partition, and

6  her probation officer was on the other side?  You

7  understand?  You have that picture in mind?

8       A     I have that picture in mind.  I don't

9  know whether this -- did that officer have a body

10 cam video on him?

11      Q     Yes.

12      A     Okay.

13      Q     And that's where the video comes from

14 that we have of that event.  So here's my question.

15            Because the officer, Mr. Roper, was not

16 permitted by the Forsyth County, Georgia, Sheriff's

17 Office, which runs the jail, to be in the same room

18 with Ms. Hill, he had to be on the other side of

19 this glass partition.  You understand that?

20      A     I do understand that.

21      Q     Okay.  And I think this is the same

22 area they use for attorney visitation.  If an

23 attorney is going to visit a prisoner, the attorney

24 has to conform to the same conditions, cannot be in

25 the same room.

Page 411

1                 COURT REPORTER CERTIFICATE

2

3   STATE OF GEORGIA:

4   COUNTY OF COBB:

5

6       I hereby certify that the foregoing transcript

7   was reported, as stated in the caption, and the

8   questions and answers thereto were reduced to

9   typewriting under my direction; that the foregoing

10  pages represent a true, complete, and correct

11  transcript of the evidence given upon said

12  deposition, and I further certify that I am not of

13  kin or counsel to the parties in the case; am not

14  in the employ of counsel for any of said parties;

15  nor am I in any way interested in the result of

16  said case.

17

18

19  _____

    Michelle S. Schreadley
20  Certified Court Reporter
    Certificate Number B-1504

21

22

23

24

25



Page 412

1                 DISCLOSURE OF NO CONTRACT

2

3          I, Michelle S. Schreadley, Certified Court
Reporter, do hereby disclose, pursuant to Article
4  10.B. of the Rules and Regulations of the Board of
Court Reporting of the Judicial Council of Georgia,
5  that I am a Georgia Certified Court Reporter; I was
contacted by the party taking the deposition to
6  provide court reporting services for this
deposition; I will not be taking this deposition
7  under any contract that is prohibited by O.C.G.A.
15-14-37(a) and (b) or Article 7.C. of the Rules
8  and Regulations of the Board; and I am not
disqualified for a relationship of interest under
9  O.C.G.A. 9-11-28(c).

10

           There is no contract to provide services
11 between myself or any person with whom I have a
principal and agency relationship, nor any attorney
12 at law in this action, party to this action, or
party having a financial interest in this action.
13 Any and all financial arrangements beyond my usual
and customary rates have been disclosed and offered
14 to all parties.

15

           This 27th day of August, 2021.

16

17

18        _____
          Michelle S. Schreadley
          Certified Court Reporter
19        Certificate Number B-1504

20

21

22

23

24

25



Page 413

1    CASE:  Brandon Cobb, et al. vs Georgia Dept. of Community Supervision, et al.

2    NAME OF WITNESS:    Judy A. Shepard-Kegl, Ph.D.

3         The preceding deposition was taken

4    in the matter, on the date and at the time and

5    place set out on the title page hereof.

6         It was requested that the deposition

7    be taken by the reporter and that same be

8    reduced to typewritten form.

9         It was agreed by and between counsel

10   and the parties that the deponent will read and

11   sign the transcript of said deposition. Said jurat

12   is to be returned, within 30 days after the transcript

13   is made available, to the following address:

14               Elizabeth Gallo Court Reporting, LLC

15               2900 Chamblee Tucker Road

16               Building 13, First Floor

17               Atlanta, Georgia 30341

18   If an errata is executed and returned

19   to EGCR within the 30 days allocated by law,

20   the executed errata will be sent to the taking

21   attorney for filing with the original transcript.

22   Should an executed errata not be forwarded from

23   EGCR to the taking attorney for filing, the

24   deposition was not reviewed and signed by the

25   deponent within 30 days.

Page 414

1   NAME OF CASE:      Brandon Cobb, et al. vs Georgia Dept. of Community Supervision, et al.
    DATE OF DEPOSITION: 08/11/2021
2   NAME OF WITNESS:   Judy A. Shepard-Kegl, Ph.D.

3   EGCR JOB NO.:      79550

4                 CERTIFICATE

5         Before me this day personally
    appeared JUDY A. SHEPARD-KEGL, PH.D., who, being duly
6   sworn, states that the foregoing transcript of
    his/her deposition, taken in the matter, on
7   the date and at the time and place set out on
    the title page hereof, constitutes a true and
8   accurate transcript of said deposition.

9                 _____

10                    JUDY A. SHEPARD-KEGL, PH.D.

11        SUBSCRIBED and SWORN to before me

12  this _____ day of _____ 20____.

13  in the jurisdiction aforesaid.

14
    _____    _____
15  My Commission Expires      Notary Public

16    STATE OF _____

17    COUNTY/CITY OF _____

18

19    []   No changes made to the Errata Sheet;

20  therefore, I am returning only this signed,

21  notarized certificate.

22    []   I am returning this signed,

23  notarized certificate and Errata Sheet with

24  changes noted.

25

**Elizabeth Gallo**
COURT REPORTING, LLC

Page 415

1               Errata Sheet

2   NAME OF CASE:     Brandon Cobb, et al. vs Georgia Dept. of Community Supervision, et al.

3   DATE OF DEPOSITION: 08/11/2021

4   NAME OF WITNESS:   Judy A. Shepard-Kegl, Ph.D.

5   Reason Codes:  1. To clarify the record

6               2. To correct transcription errors

7               3. Other

8   _____

9   Page _____ Line _____ Reason _____

10  From _____ to _____

11  Page _____ Line _____ Reason _____

12  From _____ to _____

13  Page _____ Line _____ Reason _____

14  From _____ to _____

15  Page _____ Line _____ Reason _____

16  From _____ to _____

17  Page _____ Line _____ Reason _____

18  From _____ to _____

19  Page _____ Line _____ Reason _____

20  From _____ to _____

21  Page _____ Line _____ Reason _____

22  From _____ to _____

23

24   SIGNATURE:_____DATE:_____

25           Judy A. Shepard-Kegl, Ph.D.

Page 416

1              Errata Sheet

2    NAME OF CASE:      Brandon Cobb, et al. vs Georgia Dept. of Community Supervision, et al.

3    DATE OF DEPOSITION: 08/11/2021

4    NAME OF WITNESS:   Judy A. Shepard-Kegl, Ph.D.

5    Reason Codes:  1. To clarify the record

6                   2. To correct transcription errors

7                   3. Other

8    _____
     _____

9     Page _____ Line _____ Reason _____

10    From _____ to _____

11    Page _____ Line _____ Reason _____

12    From _____ to _____

13    Page _____ Line _____ Reason _____

14    From _____ to _____

15    Page _____ Line _____ Reason _____

16    From _____ to _____

17    Page _____ Line _____ Reason _____

18    From _____ to _____

19    Page _____ Line _____ Reason _____

20    From _____ to _____

21    Page _____ Line _____ Reason _____

22    From _____ to _____

23

24     SIGNATURE:_____DATE:_____

25              Judy A. Shepard-Kegl, Ph.D.

Elizabeth Gallo
COURT REPORTING, LLC