# Exhibit Z

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRANDON COBB, et al., etc.,
       Plaintiffs,

                          CIVIL ACTION FILE
     vs.                    NO.1:19-cv-03285-WMR

GEORGIA DEPARTMENT OF
COMMUNITY SUPERVISION, et al.,
etc.,
       Defendants.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

REMOTE VIDEOTAPED DEPOSITION OF
JOSEPH NETTLES
VOLUME II

May 25, 2021
10:31 a.m.

(All attendees appeared remotely via
videoconferencing and/or teleconferencing.)

Joel P. Moyer, CCR 2745



Page 85

```
 1              APPEARANCES OF COUNSEL

 2  On behalf of the Plaintiffs:

 3      BRITTANY SHRADER, Esquire
        National Association of the Deaf
 4       Law and Advocacy Center
        8630 Fenton Street
 5      Suite 820
        Silver Spring, Maryland 20910
 6      (301) 587-1788
        brittany.shrader@nad.org
 7
        MARGARET GIRARD, Esquire
 8      Arnold & Porter Kaye Scholer, LLP
        601 Massachusetts Avenue, NW
 9      Washington, DC 20001
        (202) 942-5000
10      margaret.girard@arnoldporter.com

11      TALILA A. LEWIS, Esquire

12      PO Box 1160
        Washington, DC 20013
13      (540) 786-1325
        talila.a.lewis@gmail.com
14
        WEST RESENDES, Esquire
15      American Civil Liberties Union Foundation of Georgia, Inc.
        39 Drumm Street
16      San Francisco, California 94111
        (415) 343-0781
17      wresendes@aclu.org

18  On behalf of the Defendants:

19      GEORGE M. WEAVER, Esquire
        Hollberg & Weaver, LLP
20      6185 Mountain Brook Way
        Sandy Springs, Georgia 30328
21      (404) 760-1116
        gweaver@hw-law.com

22

23

24

25
```



Page 86

Videographer:


        Tony Wicks


Interpreters:


        Jana Owen


        Nicole Cordeau


        Branton Stewart


        Esther Fass


        Andrea Smith



Page 87

1                        INDEX TO EXAMINATIONS

2      WITNESS:  JOSEPH NETTLES

3      EXAMINATION                                        PAGE

4      By Mr. Weaver                                        91
       By Ms. Shrader                                      156
5

6                              - - -

7

                          INDEX TO EXHIBITS
8
       EXHIBITS       DESCRIPTION                          PAGE
9
       Exhibit 105    Composite documents from criminal    121
10                    case against Mr. Nettles (DCS
                      D-001203 - 1283)
11
       Exhibit 106    Composite Official Records of the     129
12                    Georgia Department of Corrections
                      (DCS D-013813 - 13932)
13
       Exhibit 107    Composite medical records (DCS        143
14                    D-013933 - 14161)

15

16

17

18     (Original Exhibits 105 through 107 have been

19     attached to the original transcript.)

20

21

22

23

24

25

Elizabeth Gallo
COURT REPORTING, LLC

Page 88

1          Deposition of JOSEPH NETTLES

2                May 25, 2021

3          THE VIDEOGRAPHER:  We are now on

4   the record.  Today's date is May 25th, 2021, and

5   the time is approximately 10:31.  This will be

6   the continuation of the remote videotaped

7   deposition of Joseph Nettles.  Will the attorneys

8   please state their names and the parties they

9   represent.

10          MS. SHRADER:  For the plaintiffs,

11  Brittany Shrader from the National Association of

12  the Deaf.

13          MR. WEAVER:  George Weaver as special

14  assistant attorney general representing Defendants

15  in the case.

16          THE VIDEOGRAPHER:  And will the court

17  reporter please swear in our interpreters followed

18  by the witness.

19     (Whereupon the interpreters were sworn.)

20     (Whereupon the witness was sworn.)

21          MR. RESENDES:  This is West Resendes.

22  I don't know if my appearance was caught and

23  documented for the record, but also please note

24  that I am West Resendes.  I'm with the ACLU, the

25  American Civil Liberties Union, for the plaintiff.



Page 89

1   Thank you.

2            INTERPRETER CORDEAU:  The interpreter

3   is going to reinterpret the conversation between

4   Joseph and West in regards to the computer problem

5   that is being had and the connection and with the

6   struggle with technology and as far as the video

7   being turned off.  I apologize if there are

8   problems with my being able to control my Internet

9   connection.

10           So we're just -- we're going to have

11  one interpreter or two interpreters?  Because last

12  time -- well, Nicole is the hearing interpreter,

13  and Branton is the deaf interpreter, and they're

14  going to work together.

15           It was the same as the first day.  And

16  Branton is saying, Joseph, remember before when we

17  had that and the video would go off?

18           But we actually kept both interpreters

19  on the screen?  And, Joseph, you remember that?

20            And Brittany is saying, Joseph,

21  remember before, you saw Branton?

22           Joseph says, yes.  Yes, he recalls.

23           MS. SHRADER:  And just for the record,

24  I know, Mr. Weaver, we discussed this in advance

25  and you were very kind to offer to postpone



Page 90
1  Mr. Nettles' deposition, but Mr. Nettles did

2  fracture his dominant signing arm prior to today's

3  deposition and has agreed to go forward with the

4  deposition today with the understanding that we'll

5  take more frequent breaks to accommodate the fact

6  that he is in some pain and discomfort from the

7  fracture in his dominant signing arm.

8            MR. WEAVER:  Are we ready to proceed?

9            MS. SHRADER:  Yes, Mr. Weaver.

10            MR. WEAVER:  Okay.  All right.  This

11  will be the continuation and completion of the

12  deposition of Mr. Nettles under the same conditions

13  as the previous deposition.  And per that, all

14  objections except as to the form of the question,

15  form of the answer, and other matters which could

16  be corrected here are reserved until time of trial

17  or hearing.

18            You want to add anything to that,

19  Brittany?

20            MS. SHRADER:  No.  Mr. Weaver, I don't

21  know if you heard before, but I did just put on the

22  record a few moments ago that you had kindly

23  offered to postpone Mr. Nettles' deposition due to

24  the fact that he has fractured his dominant signing

25  arm recently and that we have agreed to go forward

Page 91

1   with the deposition today with the understanding
2   that we will take more frequent breaks and that the
3   process might move a little more slowly.
4           MR. WEAVER:  Okay.  Just let me know
5   when he needs a break.
6           INTERPRETER OWEN:  One moment for the
7   interpreters.  Thank you.  Go ahead.
8           MR. WEAVER:  Okay.  And I'm going to
9   keep using the same unified set of exhibits.
10              JOSEPH NETTLES,
11  having been first duly sworn, was examined and
12  testified as follows:
13              EXAMINATION
14  BY MR. WEAVER:
15      Q      So let me ask you this, Mr. Nettles.
16  In the first session of your deposition, we looked
17  at some text messages you had with your officer --
18  Supervision Officer Caleb Worley.  Do you recall
19  that?
20      A      Yes.
21      Q      And these text messages had to do with
22  your work schedule and your son being in the
23  hospital.  Do you recall that?
24      A      Yes.
25      Q      The pictures in the messages of various



1      Q      When you were in the Georgia prison

2 system I guess for about ten years, did the prison

3 system, the Georgia Department of Corrections, ever

4 provide you with an ASL interpreter, either

5 remotely or in person?

6      A      No, they never did.

7      Q      Okay.  Let me ask you this.  After you

8 were let out of prison, do you remember going to

9 the sheriff's office in I believe Brantley County

10 to register as a sex offender?

11      A      Yes.

12      Q      Okay.  And at that time, were the

13 conditions of your probation discussed?

14      A      No, they did not.

15           MS. SHRADER:  Mr. Nettles, I noticed

16 you rubbing your arm again before that last

17 question.  Are you okay to continue, or do you need

18 another break?

19           THE WITNESS:  I do need a break.

20           MR. WEAVER:  Okay.

21           THE VIDEOGRAPHER:  Okay.

22           MR. WEAVER:  What are we going to say?

23 About ten minutes?

24           MS. SHRADER:  That would be great.

25           MR. WEAVER:  Okay.

Page 125

1          THE VIDEOGRAPHER:  Going off the record

2   at 2:20.

3       (Proceedings in recess, 2:20 p.m. to

4       2:35 p.m.)

5          THE VIDEOGRAPHER:  Going back on the

6   record at 2:35.

7   BY MR. WEAVER:

8       **Q    Mr. Nettles, before the last break, we**

9   **were talking about you going to the Brantley County**

10  **sheriff's office to register.  And let me show you**

11  **another page from that same exhibit, No. 105, and**

12  **ask you a question about it.**

13         INTERPRETER CORDEAU:  One moment for

14  the interpretation.  Okay.

15         MR. WEAVER:  Okay.  Just a moment.

16  BY MR. WEAVER:

17      **Q    Mr. Nettles, I just showed through**

18  **screen share some pages from Exhibit 105, and these**

19  **were Bates numbered D-1260 to 1262.  Could you see**

20  **those?**

21      A    I mean, I couldn't read anything.  It

22  was all very small.  But I did see that there were

23  pages there.

24      **Q    Okay.**

25         INTERPRETER CORDEAU:  One moment for



Page 126

1  the interpreter to clarify the answer.  This is the

2  interpreter's clarification of the answer.

3       A     I'm unable to read English, and it was

4  very tiny printed, so that's all I can give you for

5  an answer.

6  BY MR. WEAVER:

7       **Q     All right.  Well, the last page of**

8  **those pages that I showed you, it was -- had your**

9  **signature witnessed by Layton Anderson, and**

10 **apparently this was completed at the time you**

11 **were -- or near the time that you were discharged**

12 **from state prison.  Do you recall that?**

13      A     Yes.  I recall signing this document

14 and the other signing it as well.

15      **Q     Well, all of the conditions in this**

16 **document, the Sex Offender Registration**

17 **Notification Form, have what appear to be your**

18 **initials, JN.**

19            **And then at the end right above your**

20 **signature, it says, "I have read or had read to me**

21 **this registration notification form and understand**

22 **its contents."**

23            **So let me ask you:  Is that true?**

24            MS. SHRADER:  Objection.  Vague.  He

25 can answer.


Elizabeth Gallo
COURT REPORTING, LLC

Page 127

1    A    Well, no.  I mean, I can see my

2  initials written down the side of the paper.  But

3  did I actually read and understand everything a

4  hundred percent clearly?  No, I did not.

5         The whole point of me signing this

6  document was so that I could go home, so that I

7  could be free.  The point was that I was going

8  home, so I signed so I could go home.  But did I

9  completely understand this document?  Absolutely

10  not.

11  BY MR. WEAVER:

12    **Q    Did somebody read the document to you?**

13         INTERPRETER CORDEAU:  One moment for

14  the interpretation to continue.  The interpreters

15  just need a moment to conference.

16         MR. WEAVER:  Okay.

17         INTERPRETER CORDEAU:  The

18  interpreter -- the interpreter's going to

19  reinterpret the previous question for clear

20  communication of the answer.

21    A    Well, no.  I mean, I can see those

22  where I was on the side, the I-N-I -- I don't know

23  how to spell that word, that word where my -- I can

24  see the letters of my name that go down the side of

25  the paper.  I don't know how to spell that word,



Page 128

1  but I can see them.

2          I didn't actually read and understand

3  everything a hundred percent.  The whole point of

4  me signing this document was so that I could get

5  out and go home.  Again, the point was that I went

6  home.  And the fact that I didn't read and

7  completely understand everything in this document,

8  it is what it is.  My goal was to be free and go

9  home.

10 BY MR. WEAVER:

11     **Q      Well, the document says that you have**

12 **read or had read to you the registration**

13 **notification form and you understand its contents.**

14 **And you signed it, and a witness signed it.  So let**

15 **me ask you this question.  Did somebody read it to**

16 **you, this document, this sex offender notification**

17 **form?**

18     A      No.

19     **Q      Are you on any pain medication today?**

20     A      No.

21     **Q      Okay.  Are you on any drugs of any type**

22 **that might affect your ability to understand and**

23 **testify truthfully?**

24     A      No, I'm not on any drugs, no drugs,

25 just this medication to help with my muscles.  It



Page 129

1  helps my muscles relax and reduces the amount of

2  pain I might have.

3        **Q        Okay.  And you held up a bottle of**

4  **Tylenol.  Are you on that now?**

5        A     I'd say about 30 minutes ago I took --

6  I took Tylenol with water.

7        **Q        All right.  And do you believe taking**

8  **Tylenol has affected your ability to understand and**

9  **answer questions today?**

10       A     No, the Tylenol has not affected me at

11 all whatsoever.  I'm sitting here quietly just

12 paying attention, answering the questions as

13 they're asked to me, yes or no or my answers.  I

14 don't know what you think that you're seeing on

15 your side.

16       (Exhibit 106 was marked for identification.)

17 BY MR. WEAVER:

18       **Q        Okay.  Let me show you a different**

19 **document, some pages.  And I guess I need to mark**

20 **this as Exhibit 106.  And for the record, let me**

21 **give the Bates numbers.**

22                 **By the way, the last exhibit, 10 --**

23             INTERPRETER OWEN:  One moment.

24             MR. WEAVER:  This is more for the

25 record than for Mr. Nettles.



Page 154

1  you about that at one point.  But it says in a page

2  in the document in the exhibit that, quote,

3  "Patient claims he is able to hear with hearing

4  aid," close quote.

5           Did you ever tell anybody in a medical

6  clinic or visit in the prison system that you could

7  hear with hearing aids?

8     A     Okay.  So if I ever said that, it was

9  purely an excuse because the prison system, the

10 state prison system, had a program where they

11 provided free hearing aids.  So that was me taking

12 advantage of getting free hearing aids.

13    Q     Why would you want free hearing aids?

14    A     I was in prison.  I was taking

15 advantage of every free government offer given to

16 me, which included shoes and other items.  So, of

17 course, I was going to take advantage of getting

18 free hearing aids as well.

19          MS. SHRADER:  George, I need just one

20 moment to let my dog outside.  She's jumping on me.

21 I will be right back, literally just a moment.

22          MR. WEAVER:  Okay.

23          MS. SHRADER:  Thank you for that.

24          MR. WEAVER:  Okay.

25 BY MR. WEAVER:



Page 155

1      Q      When you were communicating with prison

2 staff, either medical or security staff, did having

3 hearing aids help you at all?

4      A      Oh, no.  No.  No, they didn't.

5      Q      Okay.  One more question.  In the

6 medical -- in the medical records from the prison

7 system, Exhibit 107, it says at one point -- this

8 is February 19th of 2004 -- that you're -- that

9 inmate, which is you, is, quote, "able to

10 conversate," or converse, "via paper," close quote.

11             Do you recall ever communicating with

12 medical staff in prison using written English?

13      A      No, I don't remember that.

14             MR. WEAVER:  Okay.  That's all I have

15 at this time.

16             MS. SHRADER:  Okay.  If we can just

17 take a short break, and then I will ask my

18 questions.

19             MR. WEAVER:  Okay.

20             THE VIDEOGRAPHER:  Okay.  Going off the

21 record at 4:45.

22      (Proceedings in recess, 4:45 p.m. to

23      5:01 p.m.)

24             THE VIDEOGRAPHER:  Going back on the

25 record at 5:01.



Page 156

```
 1                    EXAMINATION

 2   BY MS. SHRADER:

 3        Q      Mr. Nettles, earlier today Mr. Weaver

 4   showed you some forms that you signed before you

 5   got out of prison.  Do you recall that?

 6        A      Yes.

 7        Q      And Mr. Weaver indicated to you that at

 8   the bottom of one of those forms, which he called a

 9   registration notice, that the form said, and I

10   quote, "I have read or have had read to me the

11   registration notice and understand its contents."

12                Do you recall that?

13        A      Yes.  That is my handwriting on the

14   signature part.  But just remember, I didn't

15   understand anything that the document said.

16        Q      So, Mr. Nettles, my question for you

17   is:  Before today when Mr. Weaver informed you that

18   that document said "I've read or had read to me the

19   registration notice and understand its contents,"

20   did you know that that language was contained

21   within that document?

22        A      Well, I -- I didn't read and understand

23   the whole thing when they asked me to sign it, so I

24   can't really say that I knew what any of it said.

25   I mean, as an example, there was one form in there
```



Elizabeth Gallo
COURT REPORTING, LLC

Page 157

1  that I didn't really understand what I had signed

2  to until much later.

3              After I was out of prison, there was a

4  deaf interpreter one time who was explaining some

5  of that stuff to me.  And I kid you not.  It wasn't

6  until that point that I really understood what they

7  had been talking about back then.  And I really

8  wish I could go back in time with that

9  understanding because that would have changed how I

10 would have responded.

11             I mean, the deaf interpreter explained

12 it in a way that for the first time ever I got it,

13 differently than any other hearing interpreter had

14 done ever.  You know, it's about my language access

15 needs.  And so, you know, that's made all the

16 difference.

17             I wish I could go back in time at this

18 point for some of the stuff I signed in the past.

19       **Q       Mr. Nettles, you just talked about a**

20 **document that you realized much later when you had**

21 **a deaf interpreter explain it to you how much you**

22 **had missed.  Do you recall what document that was?**

23       A       Well, I'll put it like this.  A deaf

24 interpreter just gets what I need.  They're able to

25 put it in the language and with a culture and just

1  everything it means to be deaf and operate in a

2  visual world.  The deaf interpreter was able to

3  make it clear to me.

4              There was one thing where I don't know

5  how many times people had told me, but all of a

6  sudden I got it when the deaf person explained it.

7  And I felt like, oh, my gosh, it's so simple and so

8  clear, that concept.  But I had never really

9  understood it effectively before.

10             And so, I mean, I've learned that I

11 really do benefit from having a hearing interpreter

12 and a deaf interpreter.  The hearing interpreter

13 gets it in English, and then the deaf interpreter

14 puts it into a language that meets my needs and is

15 just -- it's like I said before.  It's made all the

16 difference in the world.

17      **Q       And, Mr. Nettles, do you remember if**

18 **that paper that the deaf interpreter was explaining**

19 **to you was about prison or about probation or about**

20 **something else?**

21      A       It would probably have been something

22 around the first time I used a deaf interpreter

23 when I was meeting with lawyers on Zoom.  I'm not

24 exactly sure, but it -- it just -- it makes all the

25 difference in the world to have a deaf person who



Page 159

1  understands me so I can get my point across more

2  clearly and also that I can understand them.

3           Like it's not just the words.  The

4  hearing interpreters would interpret what the words

5  are, but the deaf interpreters interpret what the

6  meaning is, and that's the key, what does it mean.

7  And I can't tell you how shocked -- I was actually

8  shocked as I've been realizing how much I've been

9  missing all this time.

10           And so having the deaf interpreters,

11  I've really come to realize how much more effective

12  it is.  And this really just fits my needs.  It's a

13  game changer, and it's just amazing.  It's really

14  what works for me.

15      **Q       That form that you're talking about in**

16  **the meeting that happened on Zoom with the lawyers**

17  **and the deaf interpreter who explained to you what**

18  **that form meant, was that form about rules for when**

19  **you were in prison?  Was it about rules for when**

20  **you were on probation?  Was it about Halloween**

21  **rules?  Or was it about something else?**

22      A       Well, the interpreter was interpreting

23  about something, and I'm not sure if it was -- the

24  concept that started with a V or maybe -- you know

25  what?  I don't remember exactly the topic, but I



Page 165

1  STATE OF GEORGIA:

2  COUNTY OF FULTON:

3

4       I hereby certify that the foregoing

5       transcript was reported, as stated in the

6       caption, and the questions and answers

7       thereto were reduced to typewriting under my

8       direction; that the foregoing pages represent

9       a true, complete and correct transcript of

10      the evidence given upon said hearing, and I

11      further certify that I am not of kin or

12      counsel to the parties in the case; am not in

13      the employ of counsel for any of said

14      parties; nor am I in any way interested in

15      the result of said case.

16

17

18

19

20

21

22      _____

23      Joel P. Moyer, CCR 2745

24

25



Page 166

```
 1              DISCLOSURE OF NO CONTRACT

 2         I, Joel P. Moyer, Certified Court
    Reporter, do hereby disclose pursuant to
 3  Article 10.B. of the Rules and Regulations of the
    Board of Court Reporting of the Judicial Council of
 4  Georgia that I am a Georgia Certified Court
    Reporter; I was contacted by the party taking the
 5  deposition to provide court reporting services of
    this deposition; I will not be taking this
 6  deposition under any contract that is prohibited by
    O.C.G.A. 15-14-27(a) and (b) or Article 7.C. Of the
 7  Rules and Regulations of the Board; and I am not
    disqualified for a relationship of interest under
 8  O.C.G.A. 9-11-28(c).

 9         There is no contract to provide reporting
    services between myself or any person with whom I
10  have a principal and agency relationship nor any
    attorney at law in this action, party to this
11  action, party having a financial interest in this
    action, or agent for an attorney at law in this
12  action, party to this action, or party having a
    financial interest in this action.  Any and all
13  financial arrangements beyond my usual and
    customary rates have been disclosed and offered to
14  all parties.

15         This 9th day of June 2021.

16

17

18

19

20         ---------------------------
           Joel P. Moyer, CCR 2745
21         Elizabeth Gallo Court Reporting LLC

22

23

24

25
```

