# Exhibit FF

```
 1

 2              IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF GEORGIA
 3                      ATLANTA DIVISION

 4
     BRANDON COBB, ET AL.,        )
 5   ETC.,                        )
                                  )
 6                   Plaintiffs,  )
                                  ) CIVIL ACTION FILE
 7             vs.                )
                                  ) NO: 1:19-CV-03285-WMR
 8   GEORGIA DEPARTMENT OF        )
     COMMUNITY SUPERVISION,       )
 9   ET AL., ETC.,                )
                                  )
10                   Defendants.  )

11

12

13

14

15

16      VIDEOTAPED DEPOSITION OF EDWARD L. DOWDELL, SR.

17                    ATLANTA, GEORGIA

18             THURSDAY, FEBRUARY 13, 2020

19

20

21

22

23   REPORTED BY:  TANYA L. VERHOVEN-PAGE,
                   CCR-B-1790
24

25   FILE NO.  175487
```

1

2                   February 13, 2020

3                      9:40 a.m.

4

5              Videotaped deposition of

6    EDWARD L. DOWDELL, SR., held at the Georgia

7    Attorney General's Office, 40 Capitol

8    Square, Atlanta, Georgia before

9    Tanya L. Verhoven-Page, Certified Court

10   Reporter and Notary Public of the State of

11   Georgia.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1
 2                 APPEARANCES OF COUNSEL
 3
    On behalf of the Plaintiffs:
 4
           NATIONAL ASSOCIATION OF THE DEAF
 5         8630 Fenton Street
           Silver Spring, Maryland 20910
 6         BY:  BRITTANY SHRADER, ESQ.
 7
 8
           ARNOLD & PORTER
 9         70 West Madison Street
           Chicago, Illinois 60602
10         BY:  STEPHANNA SZOTKOWSKI, ESQ.
11
12         ARNOLD & PORTER
           250 West 55th Street
13         New York, New York 10019
           BY:  TYLER FINK, ESQ.
14
15
16
    On behalf of the Defendants:
17
           HOLLBERG & WEAVER
18         2921 Piedmont Road, N.E.
           Atlanta, Georgia 30305
19         BY:  GEORGE WEAVER, ESQ.
           BY:  PAT DUTCHER, ESQ.
20
21
22
23  THE VIDEOGRAPHER: Rick Richey
24
25                       -    -    -
```

```
 1
 2                        I N D E X
 3
 4            WITNESS: EDWARD L. DOWDELL, SR.
 5
 6    Examination                              Page
 7  BY MS. SHRADER                              8
    BY MR. WEAVER                              264
 8  BY MS. SHRADER                             269
    BY MR. WEAVER                             279
 9
10
11                      EXHIBITS:
12    Dowdell
    Deposition
13    Exhibit            Description           Page
14
    Exhibit 46        Declaration of Edward
15                    Dowdell, Sr.             26
16  Exhibit 47        Offender case notes      80
17  Exhibit 48        Document bearing Bates
                      number DCS D-001725     140
18
    Exhibit 49        Conditions for Ernest
19                    Wilson                  189
20
21
22
23
24
25
```

```
 1

 2                        EXHIBITS:

 3     Previously
       marked
 4     Deposition
       Exhibit           Description            Page
 5

 6   Exhibit 11      Department of Community
                     Supervision Policy &
 7                   Procedure Statement
                     Effective Date November
 8                   25, 2015                       178

 9   Exhibit 12      Department of Community
                     Supervision Policy &
10                   Procedure Statement
                     Effective Date November
11                   29, 2019                       180

12   Exhibit 18      October 8, 2019
                     e-mail                         176
13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 6

```
 1                    E. DOWDELL

 2   ATLANTA, GEORGIA; THURSDAY, FEBRUARY 13, 2020

 3                    9:40 A.M.

 4

 5          P R O C E E D I N G S

 6

 7          THE VIDEOGRAPHER:  Good morning,

 8   ladies and gentlemen.  This is the

 9   beginning of media number one in the

10   video recorded deposition of Edward L.

11   Dowdell, Sr.

12          Today's date is February 13th,

13   2020.  It's 9:40 a.m.

14          The case is Brandon Cobb, et al.,

15   Plaintiffs, versus Georgia Department of

16   Community Supervision, et al.,

17   Defendants; Civil Action No.

18   1:19-CV-03285-WMR in the United States

19   District Court, Northern District of

20   Georgia, Atlanta Division.

21          Today's deposition is being held at

22   the Georgia Attorney General's Office, 40

23   Capitol Square, Atlanta, Georgia 30334.

24          My name is Rick Richey.  I'm the

25   videographer.  The court reporter is
```

```
 1                    E. DOWDELL

 2     Tanya Page, and we represent TSG

 3     Reporting.

 4            Would the attorneys please

 5     introduce themselves.

 6            MS. SHRADER:  Brittany Shrader with

 7     the National Association of the Deaf,

 8     attorney for Plaintiffs.

 9            MS. SZOTKOWSKI:  Stephanna

10     Szotkowksi with Arnold, Porter, Kaye,

11     Scholer, counsel for the Plaintiffs.

12            MR. FINK:  Tyler Fink with Arnold

13     Porter, Kaye Scholer, also counsel for

14     the Plaintiffs.

15            MR. WEAVER:  George Weaver with the

16     Attorney General's Office here and

17     Hollberg & Weaver, representing

18     Defendants.

19            MR. DUTCHER:  Pat Dutcher with

20     Hollberg & Weaver representing the

21     Defendants.

22            THE VIDEOGRAPHER:  Would the court

23     reporter please swear the witness.

24

25     Thereupon --
```

```
 1                    E. DOWDELL

 2              EDWARD L. DOWDELL, JR.,

 3      called as a witness, having been first duly sworn,

 4      was examined and testified as follows:

 5

 6                    EXAMINATION

 7   BY MS. SHRADER:

 8        Q     Good morning, Mr. Dowdell.

 9        A     Good morning.

10        Q     I know I introduced myself to you right

11   before we went on the record, but, again, my name is

12   Brittany Shrader.  I'm one of the attorneys

13   representing the Plaintiffs in this case.  Here with

14   me is Stephanna Szotkowksi and Tyler Fink, who also

15   represent the Plaintiffs in this case.

16        A     Okay.

17        Q     I know you just heard the videographer

18   note the time.  It's about 9:42 right now.  I

19   understand that you had to drive quite a ways.  We

20   really appreciate you being here.  We had anticipated

21   starting at 9:00.

22              I'm going to do my best to get us out of

23   here as quickly as possible, but since we are

24   starting a little bit late, I just wanted to let you

25   know at the outset, we might go a little later than
```

```
 1                         E. DOWDELL
 2       Q     Right.  But as your role as a community
 3  supervision officer, isn't part of your job to assist
 4  them in becoming productive members of society?
 5       A     Yes.
 6       Q     Meaning to assist them in finding
 7  employment if they can?
 8       A     But everybody that drawing SSI, they
 9  don't have a job.  I don't -- because I know they're
10  getting some type of income.
11       Q     So you don't try to help people with SSI
12  get a job?
13       A     Basically, I let them go out on their own
14  and try to get a job with SSI.  I don't -- because
15  they're already getting some type of funding.  If you
16  don't have anything coming in, yeah, I try to get
17  them a job.
18       Q     But you didn't try to help Mr. Wilson get
19  a job, right?
20       A     No, no.
21       Q     And that's because you thought an
22  employer wouldn't hire him because he was deaf?
23       A     The places I know, I know they wouldn't.
24       Q     Okay.  The home searches that you were
25  talking about or the residence walk-throughs, if you
```

```
 1                    E. DOWDELL
 2   were to find contraband during one of those searches,
 3   what would you do?
 4        A     Confiscate it and I take pictures of it
 5   and I file it.  And I ask -- you know, ask what the
 6   contraband, what they done.  It's all depending on
 7   what type of contraband.
 8        Q     If the contraband were an arrestable
 9   offense, would you make an arrest?
10        A     Yes, I would.
11        Q     And what does that process look like, if
12   during a home visit there is something that you
13   observe that's an arrestable offense?  What happens?
14        A     I call another officer out there to
15   assist or I have the offender report to the office
16   the next morning.
17        Q     So the arrest doesn't happen on the spot,
18   it's the next --
19        A     It depends.  If there's two officers, it
20   would.
21        Q     Okay.  So during the Halloween where
22   there's a group of officers that go out --
23        A     He would get arrested.
24        Q     -- an arrest could happen on the spot?
25        A     That's correct.
```

Page 139

1                          E. DOWDELL

2       Q       Now, you talked before about sex offender

3   treatment being required for the persons under your

4   supervision, right?

5       A       That's correct.

6       Q       And the kind of reason and rationale

7   behind -- behind that.

8               When you first began supervising

9   Mr. Wilson, was sex offender treatment one of the

10  terms and conditions of his release?

11      A       That's correct.

12      Q       Is it currently?  Is it currently one of

13  the terms and conditions of his release?

14      A       Not now.

15      Q       Why not?

16      A       Because he went back in front of the

17  court down in Jasper County and they terminated it,

18  because of his condition, and they are a place in

19  Newton County not equipped for impaired or deaf

20  personnel.

21      Q       I'm sorry?

22      A       The place in Newton County, they don't

23  have the equipment for deaf personnel.

24      Q       So I want to unpack a little bit of what

25  you said.  I'm going to mark this document as -- I

```
 1                        E. DOWDELL

 2    believe we're up to Exhibit 48.

 3                  (Dowdell Deposition Exhibit No. 48

 4         was marked for the record.)

 5    BY MS. SHRADER:

 6         Q     Is this document the petition for

 7    modification of Mr. Wilson's sentence that you were

 8    talking about in terms of going back before the court

 9    to get the term removed from his probation, that he

10    had to go to sex offender treatment?

11         A     Yes, it came from Jasper County.

12         Q     And this was filed on August 27th, 2019?

13         A     That's correct.

14         Q     And you were supervising Mr. Wilson at

15    that time; is that right?

16         A     Yes.

17         Q     So who made the determination that the

18    request should be made to the court to remove sex

19    offender treatment as one of the terms and conditions

20    of Mr. Wilson's probation?

21         A     Me and his officer talked about it,

22    Officer Parham, because the condition, he couldn't go

23    to sex offender treatment.  Because I had got with

24    the counselor over there and she say they're not

25    equipped for that.
```

Page 141

```
 1                      E. DOWDELL
 2          And so that's part of the condition, the
 3   only way we can do it is try to go back in front of
 4   the judge, have him remove it.
 5      Q    So you spoke to this Officer Parham.
 6      A    Parham.
 7      Q    Is that the person who did the initial
 8   intake?  Is that the same person, Robert Parham?
 9      A    Yes.
10      Q    Okay.  And the two of you discussed and
11   determined that you should go back to the court to
12   ask them to remove this condition, and you're saying
13   because the treatment didn't have the right services
14   available?
15      A    Don't have the services available.
16      Q    And when you say don't have the right
17   services available, do you mean they didn't have sex
18   offender services available?  What do you mean?
19      A    No, they don't have interpreter --
20   equipment for impaired people.  So --
21      Q    So they don't have interpreters and they
22   don't have CART?
23      A    No.
24      Q    Okay.  Did you discuss this with your
25   supervisor?
```

```
 1                        E. DOWDELL
 2        A     Yes.  I talked to him for a brief moment
 3   and I said I'm going to write it up.  And me and the
 4   officer talked and the only way -- because we take
 5   everything to get it amended.  If there's something
 6   they can't do, we take it back to court and get it
 7   amended or removed or try to get them to change it.
 8        Q     And did your supervisor approve you
 9   attempting to remove the sex offender treatment
10   component to Mr. Wilson's --
11        A     Yes, I talked to them.
12        Q     Did you ever discuss with your supervisor
13   providing accommodations for Mr. Wilson so that he
14   could attend sex offender treatment?
15        A     The treatment is a whole -- that's like a
16   privatized treatment, and she said she couldn't do
17   it.
18        Q     I understand.  But my question is a
19   little bit different.
20              I understand it's a private provider, but
21   did you ever talk to your supervisors about DCS
22   providing the appropriate accommodations so that
23   Mr. Wilson could engage in treatment?
24        A     No, the only thing I just mentioned, what
25   I just said about the privatized and she said she
```

Page 143

1                          E. DOWDELL

2    couldn't do it.

3         Q    Did your supervisors ever suggest to you

4    that, perhaps, DCS should provide accommodations so

5    that Mr. Wilson could engage in treatment?

6         A    No.

7         Q    So the solution was to simply remove

8    treatment as a component of his release?

9         A    Yes.

10        Q    And you talked about before, treatment is

11   an important part of a person's --

12        A    Yes.

13        Q    -- release, right?

14        A    Yes.

15        Q    To help prevent recidivism?

16        A    That's correct.

17        Q    And Mr. Wilson was not able to engage in

18   that important component of his release because he's

19   deaf; is that right?

20        A    Yes, they're not equipped.

21        Q    And GDCS didn't do anything to provide

22   him with the accommodations he needed to engage in

23   treatment; is that right?

24             MR. WEAVER:  Objection.

25             THE WITNESS:  That's right.

1                    E. DOWDELL

2              MR. WEAVER:  Misstates his

3         testimony.

4              MS. SHRADER:  I think he just

5         answered that that was correct.

6              MR. WEAVER:  And assumes facts not

7         in evidence.

8    BY MS. SHRADER:

9         Q    So you talked about requiring two

10   in-person contacts with your supervisees.

11              Aside from the in-person contacts, do you

12   have any other type of contacts with the people you

13   supervise?

14        A    That's it.

15        Q    So you don't typically talk to them over

16   the telephone?

17        A    No, I do not.

18        Q    Do you provide them with an e-mail

19   address for you to contact you?

20        A    Well, they -- they can text me or call me

21   on my phone.

22        Q    Okay.  And is that like an approved mode

23   of communication that you have with your supervisees?

24   They know that they're allowed to text or call you?

25        A    They know to text me.

1                        E. DOWDELL

2        Q    And typically do you respond to every

3   text or phone call that you receive?

4        A    Yes.  Yes, see what's going on.

5        Q    And so if you are responding to a text or

6   a phone call, would that typically be in the same

7   format?  Like, would you respond back with a text or

8   respond back with a phone call?

9        A    It all depends on the situation.  Like I

10  said, I've got a lot of predators.  So if they get a

11  masked (sic.) attempt, I need to know where they're

12  at and what their location is.  That all depends.

13  But I always got the texts -- if it's not serious, I

14  always text them back.

15       Q    So depending on it, you might actually go

16  sigh them in-person, or if you feel like it's not

17  that serious you might just text them back?

18       A    Exactly.

19       Q    So what types of conversations, I guess,

20  would be those like not so serious things that you

21  would be okay with having over a text message?

22       A    Sometimes -- a lot of them will text me

23  and say they're running late for curfew because

24  they're working, they're doing something, they've got

25  stuff.  So I kind of understand that, but not no

```
 1                   J U R A T

 2

 3    I,              , do hereby certify under

 4    penalty of perjury that I have read the foregoing

 5    transcript of my deposition taken on              ;

 6    that I have made such corrections as appear noted

 7    herein in ink, initialed by me; that my testimony as

 8    contained herein, as corrected, is true and correct.

 9

10    DATED this _____ day of _____, 2020,

11    at _____,         .

12

13

14

15

16

17    _____

18        Edward L. Dowdell, Sr.

19

20

21

22

23

24

25
```

1

2                    D I S C L O S U R E

3

4   STATE OF GEORGIA     )   DEPOSITION OF:

5

6   FULTON COUNTY        )   EDWARD L. DOWDELL, SR.

7

8        Pursuant to Article 8.B of the Rules and
    Regulations of the Board of Court Reporting of the
9   Judicial Council of Georgia, I make the following
    disclosure:
10
         I am a Georgia Certified Court Reporter.  I am
11  here as a representative of TSG Reporting.

12       TSG Reporting was contacted by the offices of
    American Civil Liberties Union Foundation to provide
13  court reporting services for this deposition.  TSG
    Reporting will not be taking this deposition under
14  any contract that is prohibited by O.C.G.A. 15-14-37
    (a) and (b).
15
         TSG Reporting has no contract or agreement to
16  provide court reporting services with any party to
    the case, or any reporter or reporting agency from
17  whom a referral might have been made to cover the
    deposition.
18
         TSG Reporting will charge its usual and
19  customary rates to all parties in the case, and a
    financial discount will not be given to any party in
20  this litigation.

21  Dated: February 26, 2020.

22

23

24  _____
    Tanya L. Verhoven-Page,
25  Certified Court Reporter,
    B-1790.

1

2                    C E R T I F I C A T E

3

4    STATE OF GEORGIA:

5    FULTON COUNTY:

6

7             I hereby certify that the foregoing

8         deposition was reported, as stated in the

9         caption, and the questions and answers

10        thereto were reduced to written page

11        under my direction, that the preceding

12        pages represent a true and correct

13        transcript of the evidence given by said

14        witness.

15             I further certify that I am not of

16        kin or counsel to the parties in the

17        case, am not in the regular employ of

18        counsel for any of said parties, nor am I

19        in any way financially interested in the

20        result of said case.

21             Dated this 26th day of February,

22        2020.

23

24        _____

25        Tanya L. Verhoven-Page,
          Certified Court Reporter,
          B-1790.

Page 286

```
 1                    ERRATA SHEET

 2   Case Name:

 3   Deposition Date:

 4   Deponent:

 5   Pg.  No. Now Reads      Should Read  Reason

 6   ___  ___ _____     _____   _____

 7   ___  ___ _____     _____   _____

 8   ___  ___ _____     _____   _____

 9   ___  ___ _____     _____   _____

10   ___  ___ _____     _____   _____

11   ___  ___ _____     _____   _____

12   ___  ___ _____     _____   _____

13   ___  ___ _____     _____   _____

14   ___  ___ _____     _____   _____

15   ___  ___ _____     _____   _____

16   ___  ___ _____     _____   _____

17   ___  ___ _____     _____   _____

18   ___  ___ _____     _____   _____

19   ___  ___ _____     _____   _____

20

21                           _____
                             Signature of Deponent

22   SUBSCRIBED AND SWORN BEFORE ME

23   THIS _____ DAY OF _____, 2020.

24   _____

25   (Notary Public)   MY COMMISSION EXPIRES:_____
```