# EXPERT REPORT OF BARRY MARANO

Re: <u>Brandon Cobb, et al., etc., v. Ga. Dept. of Community Supervision, et al.,</u>
Civil Action File No. 1:19-cv-03285-WMR (N.D. Ga.)

## I. OPINIONS AND BASES FOR OPINIONS

a. The opinions I intend to offer are:

   i. Responding to the needs of a probationer or parolee who is deaf or has another disability has to be done on a case-by-case basis, and an individualized assessment is key. There is no "typical" request for an accommodation or modification, because it all depends on the probationer or parolee. One size does not fit all. The accommodations process requires an interactive process of communicating with the probationer or parolee to determine what he or she needs and wants, what is objectively reasonable, as well as whether anything hasn't worked for him or her in the past.
   ii. The current Georgia Department of Community Supervision (DCS) Americans Disability Association Title II policy is consistent with national standards for accommodating hearing disabilities in the provision of government services by criminal justice agencies.
   iii. DCS training materials are adequate to inform its Community Supervision Officers of DCS policies related to ADA Title II. I interviewed the ADA Coordinator of the Agency who was knowledgeable of ADA rnandates for Title II Organizations and I am convinced he is maintaining required training and follow up to ensure compliance.
   iv. ASL interpreters over VRI may provide effective communications with deaf or hearing impaired persons.
   v. ASL interpreters over VRI may be sufficient to provide effective communications with deaf or hearing impaired persons, particularly with respect to routine visits in which predictable or routine information is communicated.
   vi. Where VRI is available, it is not necessary for ASL interpreters to be physically present for effective communications between law enforcement officers and offenders on home field visits.
   vii. A sample of bodycam videos of home field visits of DCS officers with named Plaintiffs after DCS made VRI available shows effective communications.
   viii. There are serious security concerns in bringing live ASL interpreters with law enforcement officers on field visits to the homes of criminal defendants on probation and parole.
   ix. A team or teams of both hearing and deaf ASL interpreters are seldom if ever necessary for effective communications between law enforcement officers and criminal defendants on probation and parole on home field visits.

b. The bases for my opinions are my training, education, and experience in corrections and criminal justice agencies. In addition, my opinions are based on my review of pertinent materials as outlined in this report and any supplemental reports.

c. All opinions are expressed to a reasonable degree of professional certainty.

d. My testimony may be affected by any new information that is provided. I may also provide supplemental expert reports.

Deposition Exhibit 130

## II. MATERIALS CONSIDERED IN FORMING OPINIONS.

    a. First Amended Complaint

    b. The current DCS ADA Title II policy and other related policies.

    c. A sample of bodycam videos of home field visits of DCS officers with named Plaintiffs after DCS made VRI available to its officers.

    d. DCS training materials.

    e. Georgia statutes governing DCS.

    f. Reports and depositions of Plaintiffs' experts:

        i. Judy Shepard-Kegl;
        ii. Karen Pelz-Straus;
        iii. Amy June Rowley
        iv. Erin Moriarity Harrelson

    g. Review of the DCS Portal computer system.

## III. EXHIBITS THAT MAY BE USED TO SUMMARIZE OR SUPPORT OPINIONS.

    a. All materials mentioned above.

## IV. QUALIFICATIONS

I am a 43 year veteran of the Virginia Department of Corrections, I was appointed as the agency Americans with Disabilities Act (ADA) Coordinator in 2015 after serving as the facility coordinator at the Powhatan Correctional Center since 2008. I began my career as a Correctional Officer in 1978 and became a counselor in 1987. I have provided case management services to the offenders in the General Population, Restrictive Housing, as well as Medical and Mental Health Units.

In 2006, I was assigned to provide case management and accommodation services to the Deaf and Hard of Hearing population at the Powhatan Correctional Center. This assignment mandated that I supervise the installment and operation of the videophone and video remote interpreting (VRI) communication systems for deaf offenders as well as TTY access and voice carry-over (VCO) communication for the Hard of Hearing population. In 2008, as the Senior Case Management Counselor and facility ADA Coordinator, I became responsible for accommodations for all disabled offenders at that facility.

Since 2015, I have conducted surveys and disability assessments as well as training to facility ADA Coordinators and Parole/Probation Districts for the Virginia Department of Corrections. Probation and Parole are both under the umbrella of Corrections. I am the appointed contact for disability issues within the Department of Corrections and for outside agencies. I provide assistance to the Virginia Attorney General's Office with legal settlement efforts. I have presented educational classes for the Mid-Atlantic ADA [of the ADA National Network) and have produced a Webinar on Effective

Deposition Exhibit 130

Communications in a Correctional Environment for correctional staff, as well as other trainings for Virginia's correctional staff. I review all inmate accommodation requests, appeals and complaints for the VADOC

In my position as the ADA Coordinator, I also investigate and respond to allegations from the DOJ's Office of Civil Rights, on behalf of the Virginia Department of Corrections, I have testified before as a fact witness in depositions for the Virginia Department of Corrections and as a witness under Federal Rule 30(b)(6) on its behalf.

## V. PRIOR TESTIMONY

In the past four years, I have testified as an expert only in the case of Sabata. et al: v, Nebraska Dept-Af-QQrrectimal-Sendces.Äa1 Civil Action File No. 4:17-cv-03107- RFR-MDN (D. Neb.). I gave a deposition in that case on May 21, 2019.

## VI. COMPENSATION

I am being paid $150 per hour for the time I spend on this case. I am also reimbursed for travel expenses.

This the ___21___ day of ___MAY___, 2021.

_____
BARRY MARANO

Deposition Exhibit 130