IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BRANDON COBB, MARY HILL, and JOSEPH NETTLES, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**GEORGIA DEPARTMENT OF COMMUNITY SUPERVISION, and MICHAEL NAIL, in his official capacity as Commissioner of the Georgia Department of Community Supervision,**<br><br>*Defendants*. | Civil Action No.<br>1:19-cv-03285-WMR<br><br>**CLASS ACTION** |

### ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND AWARD OF ATTORNEYS' FEES

Before the Court is Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement Agreement and Award of Attorneys' Fees. ECF No. 299 ("the Motion"). The parties reached and the Court preliminarily approved the class action Settlement Agreement, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, resolving the claims for injunctive and declaratory relief in this case. *See* Revised Order Granting Preliminary Approval of Class Action Settlement and

Approval of Proposed Notice of Settlement, ECF No. 294 (the "Preliminary Approval Order"). Following preliminary approval, the parties provided notice of the Settlement Agreement to class members. The Court held a final fairness hearing on May 2, 2024 (the "Final Fairness Hearing").

**THEREFORE**, upon review and consideration of Plaintiffs' Motion, and for the reasons set forth in the Court's Preliminary Approval Order, on the record during the Final Fairness Hearing, and further set out below, **IT IS HEREBY ORDERED** that:

Final approval of the class action Settlement Agreement is **GRANTED** and the Settlement Agreement, attached hereto as Appendix A, is adopted by incorporation as the Order of the Court.

## BACKGROUND

On July 19, 2019, Plaintiffs Brandon Cobb, Carlos Herrera, Joseph Nettles, Ernest Wilson, Jeremy Woody, and Jerry Coen, for themselves and a class of deaf and hard of hearing people on probation and parole under the supervision of the George Department of Community Supervision ("DCS"), filed this action against Defendants. ECF No. 1. Plaintiffs initially alleged that Defendants' practices violated the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), and the Fourteenth Amendment to the U.S. Constitution by denying Plaintiffs the auxiliary aids and services and reasonable

2

modifications they need to understand the terms of their supervision, to communicate effectively with Defendants, and to fully participate in the Defendants' programs, services, and activities. *Id.* Plaintiffs sought injunctive and declaratory relief. They did not seek damages.

On August 29, 2019, Defendants answered the complaint. ECF No. 33. On October 9, 2019, Plaintiffs submitted a motion to certify a class of plaintiffs including all present and future deaf and hard of hearing individuals who are subject to supervision by DCS, ECF No. 53, and on December 10, 2019, Defendants filed a Motion to Dismiss, ECF No. 76. On March 11, 2020, this Court denied Defendants' Motion to Dismiss and delayed ruling on the merits of class certification, instead directing the parties to engage in discovery related to the potential class and to engage in mediation. ECF No. 104. The March 2020 order precipitated the first of three attempts by the parties to negotiate settlement. In May 2020, the parties participated in a private mediation before the Hon. M. Gino Brogdon, Sr.; however, the parties were unable to reach agreement. *See* ECF Nos. 108, 112, 113. On July 27, 2020, the Court issued an order terminating the Plaintiffs' Motion for Class Certification and inviting Plaintiffs to re-submit the motion upon the conclusion of discovery, which at the time was scheduled to conclude in September 2020. ECF No. 118. During the following months, both parties took depositions and engaged in written discovery.

Due to changes in the circumstances of some named plaintiffs, Plaintiffs filed a consent motion on January 20, 2021 seeking to remove Mr. Herrera, Mr. Wilson, Mr. Woody and Mr. Coen as named plaintiffs and to add Travis Wortham and Philander Willis as plaintiffs and putative class representatives. ECF No. 146. The Court granted this motion and Plaintiffs filed an Amended Complaint on January 22, 2021. ECF Nos. 147, 148. On May 18, 2021, Plaintiffs filed a further motion to add Ms. Hill and remove Mr. Willis and Mr. Wortham as named plaintiffs. ECF No. 167. The Court granted the Plaintiffs' motion on June 30, 2021, ECF No. 179-1, and Plaintiffs filed a Second Amended Complaint on July 1, 2021, ECF No. 181. Discovery closed on August 16, 2021. ECF No. 180.

In July 2021, the parties began to engage in a second round of settlement negotiations but, after several months of discussion, were not able to reach agreement. On February 9, 2022, Plaintiffs moved again to certify the class and on February 11, 2022, Defendants moved for summary judgment. ECF Nos. 197, 200. The Court held a hearing on the motions on August 26, 2022 and on October 13, 2022, the Court granted Plaintiffs' Motion for Class Certification and denied the Defendants' Motion for Summary Judgment. ECF No. 262. Subsequently, the parties resumed settlement negotiations. On January 31, 2023, the parties submitted a joint motion to appoint a magistrate judge as mediator, and on February 1, 2023,

the case was referred to Magistrate Judge Christopher C. Bly for mediation. ECF Nos. 270, 274.

The parties engaged in settlement discussions over the course of the next six months, attending six in-person mediation sessions with Hon. Judge Bly held on March 2, March 14, April 3, May 11, June 15, and July 24, 2023, and communicating with each other via telephone, email, and Zoom between mediation sessions. The parties reached a resolution on the merits of the case during the June 15, 2023 mediation session and subsequently reached agreement on attorneys' fees during the July 24, 2023 session. ECF No. 289.

The parties submitted a Joint Motion for Preliminary Approval of Class Action Settlement Agreement on September 21, 2023, ECF No. 292 (the "Preliminary Approval Motion"), which was subsequently granted by the Court by order dated January 16, 2024, ECF No. 293, as later revised on January 29, 2024, ECF No. 294.

## DISCUSSION

**I.     THE SETTLEMENT WARRANTS FINAL APPROVAL**

Under Rule 23(e), the claims of a proposed class "may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). To approve a class settlement, a court must find "that it is fair, reasonable, and adequate" in light of the adequacy of the representation of the class, the manner in

5

which the settlement was negotiated, the adequacy of the relief provided to the class under the agreement, and the fairness of treatment of the class members relative to each other. Fed. R. Civ. P. 23(e)(2). "Determining the fairness of the settlement is left to the sound discretion of the trial court." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

  **A.**  **The Class Representatives and Plaintiffs' Counsel Have Adequately Represented the Class and Negotiated a Proposed Settlement at Arm's Length and With Sufficient Information to Reach an Effective Settlement**

The Court finds that the parties' Settlement Agreement is the product of arm's-length, adversarial negotiations between experienced and knowledgeable counsel who have prosecuted and defended this litigation for over four years. Fed. R. Civ. P. 23(e)(2).

Before settling the case, the parties completed a discovery process spanning more than a year and reviewed voluminous records, consulted with experts, and deposed over twenty individuals, including experts, DCS officials, and named plaintiffs. The parties also fully briefed and argued a Motion to Dismiss, a Motion for Summary Judgment, and a Motion for Class Certification. The parties are well informed about the procedures, practices, and policies of DCS and how they affect the class members. Therefore, the Court finds that Plaintiffs and their counsel "had an adequate information base" from which to negotiate effective relief. Fed. R. Civ. P. 23 Advisory Comm.'s Note, 2018 amend.

6

Further, the parties engaged in three separate rounds of settlement discussions over the course of three years and ultimately reached agreement through a lengthy mediation process overseen by Judge Bly, and that agreement was approved by the class representatives. Motion at 5, 7. As a result, the Court finds the process by which the Settlement Agreement was reached was fair to the class members and free of collusion between the parties. *See, e.g.*, *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) (affirming approval of classwide settlement agreement where "the parties settled only after engaging in extensive arms-length negotiations moderated by an experienced, court-appointed mediator"). In addition, the parties reached agreement and executed a term sheet reflecting the relief for the class before negotiating attorneys' fees, thereby reducing the risk of a conflict between the interests of the class members and those of Plaintiffs' counsel. *See, e.g.*, ECF Nos. 287, 289.

### B.     The Relief Provided for the Class Is Fair and Adequate

The Court finds that the Settlement Agreement provides adequate substantive relief for the class members and treats class members equitably. Factors that must be considered in determining the substantive adequacy of relief include:

>    (i)     the costs, risks, and delay of trial and appeal;
>
>    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv) any agreement required to be identified under Rule 23(e)(3).

*See* Fed. R. Civ. P. 23(e)(2)(C)–(D).  In making this determination, the Court also considered: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011); *Nelson v. Mead Johnson & Johnson Co.,* 484 F. App'x 429, 434 (11th Cir. 2012).

  **(i)** **Likelihood of success at trial, and associated costs and delays**

  Plaintiffs alleged in the Complaint that Defendants' practices constitute violations of law, including the ADA and Section 504.  Specifically, Plaintiffs allege that Defendants deny them the auxiliary aids and services and reasonable modifications they need to understand the terms of their supervision, to communicate effectively with Defendants, and to fully participate in Defendants' programs, services, and activities.  Defendants have raised defenses to Plaintiffs' claims and have denied liability.  Defendants' factual and legal defenses have not been tested outside of the denial of their Motion for Summary Judgment.

Accordingly, there is uncertainty about how the merits of Plaintiffs' claims would ultimately be resolved if the case proceeded to a trial.

A trial on the merits would also entail substantial litigation costs and delay in the resolution of this case. Before a trial could occur, the parties and the Court would need to litigate numerous pretrial matters, including scheduling, logistics for testimony by deaf witnesses at trial, evidentiary matters, and stipulations. As a result, the cost of further litigation would be considerable in terms of time and resources expended.

### (ii) Range of possible recovery

"In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages that plaintiffs could recover at trial and combine this with an analysis of plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries." *Columbus Drywall & Insulation Inc. v. Masco Corp.,* 258 F.R.D. 545, 559 (N.D. Ga. 2007). Here, if Plaintiffs established Defendants' liability at trial, Defendants would be required to change certain policies, procedures, and practices to conform with the law. The parties' Settlement Agreement represents the parties' negotiated compromise between Plaintiffs' goal of remedying conduct that allegedly violates Class Members' rights and Defendants' goal of avoiding undue intrusion into its operations. The Court finds the Settlement Agreement likely provides prospective relief with a similar

impact on the experiences of class members as what the class could receive after a favorable result at trial, but without the attendant delay, expense, and risk of further litigation.

In particular, Defendants have agreed to detailed terms that directly address the class claims in this case. Motion at 11-12. These terms were the product of extensive and productive negotiations by the parties. *Id.* Among other things, the Settlement Agreement requires that DCS determine at the initial meeting whether a supervisee appears to be deaf or hard of hearing. For such supervisees, DCS will take specific steps to determine the individual's communication needs, including in appropriate cases sending the individual for an external communication assessment conducted by an outside agency. This process leads to the development and implementation of a communication plan, which will list the supervisee's accommodations, including the appropriate auxiliary aids and services that will be provided to the supervisee to provide effective communication as well as the supervisee's preferred method of communication. The Settlement Agreement provides procedures for noting, tracking, and following the communication plan.

The Settlement Agreement also provides new procedures and requirements for DCS's use of video-remote interpretation services and qualified interpreters, and for the use of auxiliary aids and services for critical interactions. The Settlement Agreement requires annual and as-needed training for DCS staff on compliance with

DCS's ADA policy, the ADA, Section 504, and the procedures required by the Settlement Agreement as well as periodic evaluation of whether communication access is effective. The Settlement Agreement includes a process for resolving complaints and concerns by class members and the provision of agreed-upon documentation by Defendants to facilitate ongoing monitoring by Plaintiffs' counsel for the term of the Settlement Agreement.

Given the uncertainties discussed in the preceding section, the Court finds the proposed Settlement Agreement is fair and within the range of possible recovery at trial.

### (iii) Complexity, expense, and duration of litigation

By entering into this negotiated resolution to the case, the parties avoid the time and expense a trial on the merits would entail. In particular, given the nature of this case, various interpreters would be required at trial, lengthening the time, complexity, and expense for trial. The parties estimate that a trial on the merits would last approximately three to four weeks. In light of these considerations, the Court finds that the Settlement Agreement avoids the potential costs of continued litigation for the Class and the Defendants.

### (iv)   Substance and degree of opposition to the settlement

The Court is not aware of any objections to the terms of the Settlement Agreement.  Motion at 14, 20.  Therefore, this factor also weighs in favor of approving the settlement reached in this case.

### (v)   Stage of the proceeding at which the settlement was achieved

"The stage of the proceedings at which a settlement is achieved is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).  Here, the parties completed a discovery process spanning more than a year and reviewed voluminous records, consulted with experts, and deposed over twenty individuals, including experts, DCS officials, and named plaintiffs.  In addition, the parties are familiar with the relevant legal issues as those issues were raised in the Defendants' Motion to Dismiss and Motion for Summary Judgment, as well as Plaintiffs' Motion for Class Certification. Settlement was achieved in good faith following a formal mediation and only after this Court ruled on Defendants' Motion for Summary Judgment.  Accordingly, the Court finds this factor weighs in favor of approving the Settlement Agreement.

### (vi) Other agreements

Rule 23(e)(3) states that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Here, there are no other agreements between the parties.

### (vii) Attorneys' fees and costs

Whether the attorneys' fees are reasonable on their own terms is a Rule 23(h) analysis. *See infra* § III. By contrast, under Rule 23(e), the question is whether attorneys' fees impact the other settlement terms. *See Pinon v. Daimler AG*, 2021 WL 6285941, at *7 (N.D. Ga. Nov. 30, 2021) (finding class relief adequate where attorneys' fees negotiated only after reaching agreement on class relief, and payment of fees did not impact relief available to class members). Here, Plaintiffs' counsel request $1,250,000 in attorneys' fees and costs. Given this action seeks only declaratory and injunctive relief, there is no reduction or impact whatsoever on the relief provided to the class under the proposed Settlement Agreement. Indeed, the parties negotiated attorneys' fees and costs only after agreeing to and executing a term sheet memorializing the relief to the class. Therefore, and as discussed in detail below, *infra* § III, Plaintiffs' counsel's requested attorneys' fees award is reasonable in the context of granting final approval of the settlement in this action.

## C. The Proposed Settlement Treats Class Members Equitably Relative to Each Other

The proposed settlement "treats class members equitably relative to each other," as is required by Federal Rule of Civil Procedure 23(e)(2)(D). This is an injunctive-relief-only class action settlement, which provides for changes to the procedures, policies, and practices of DCS. Accordingly, the provisions of the Settlement Agreement apply equally to all class members subject to supervision by DCS.

Therefore, applying Rule 23(e) in connection with the factors discussed above, the Court finds the Class Representatives and Plaintiffs' counsel have adequately represented the class, finds the Settlement Agreement is a product of extensive arm's-length negotiations by seasoned counsel, and finds that the Settlement Agreement is fair, reasonable, and adequate.

## II. THE NOTICE PROGRAM COMPLIED WITH DUE PROCESS AND RULE 23

The Court must also ensure that notice has been provided to class members in compliance with due process and Federal Rules of Civil Procedure 23(e)(1) and 23(h)(1). For the reasons set forth in the Court's Preliminary Approval Order, ECF No. 294 at 3–5, the Court found the form of the Notice and method of directing Notice proposed by the parties both satisfied the requirements of Rule 23(e) and 23(h)(1).

On February 9, 2024, Defendants filed two Proofs of Service confirming (i) on January 22, 2024, Defendants served a roster of class members on Plaintiffs' counsel containing the names and most current contact information known to DCS, and (ii) served the Notice on the U.S. Attorney General and appropriate state officials in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715. ECF Nos. 295, 296 (including attachments).

On February 15, 2024, Plaintiffs' Counsel filed a Notice of Compliance confirming Plaintiffs caused: (i) the Settlement Agreement, DCS's ADA Policy, and the Notice to be translated into American Sign Language; (ii) the written Notice to be mailed to 138 class members identified by Defendants, and (iii) the same to be made available online, together with the Settlement Agreement and ADA Policy in both written and ASL video formats, at the location indicated in the Notice. ECF No. 297 (including attachments). Furthermore, as described in their Motion, Plaintiffs' counsel received email and video outreach from three absent class members, all of whom expressed full support for the Settlement Agreement. Motion at 19-20. Finally, as discussed above, the Court is not aware of any objections to the Settlement Agreement.

For these reasons, the Court reaffirms its prior finding that the Notice was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford[ed] them an opportunity to present their

objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (citation omitted). The Court further finds that the parties have complied with the Court's directive in that regard and, as a result, class members were given sufficient notice of the terms of the Settlement Agreement, the requested attorneys' fees award, and their rights to object to the same in compliance with due process and the Federal Rules of Civil Procedure.

### III.   ATTORNEYS' FEES AND COSTS

Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), the parties request that the Court approve the award of attorneys' fees provided in the Settlement Agreement negotiated by the Parties as a result of court-ordered mediation. Motion at 20-21 (incorporating by reference Preliminary Approval Motion). The requested award is authorized by Rule 23(h), which provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The proposed settlement awards Plaintiffs' counsel $1,250,000 for their work in litigating this matter to settlement. Settlement Agreement ¶ 43.

The Court finds that the Settlement Agreement's award of attorneys' fees and costs is reasonable. Plaintiffs would be entitled to an award of attorneys' fees and costs as a prevailing party in this case, including under the fee-shifting provisions of the ADA and Section 504. 42 U.S.C. § 12205; 29 U.S.C. § 794a(a)(2); 42 U.S.C. §

1988. The agreed-upon fee amount is reasonable in relation to what the Court might award Plaintiffs under those provisions. The proper measure of fees in a statutory fee-shifting case is the lodestar method. *In re Home Depot Inc.*, 931 F.3d 1065, 1081 (11th Cir. 2019) (citing *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992)). The lodestar is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1986)).

A reasonable hourly rate is the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Loranger*, 10 F.3d at 781. The Court finds the hourly rates utilized by Plaintiffs in calculating the lodestar are reasonable, including because they are consistent with rates that were recently approved and awarded by the Northern District of Georgia. Preliminary Approval Motion at 12 (citing *Common Cause Georgia v. Raffensperger*, 18-cv-5102-AT, 2020 WL 12948010 at *7 (N.D. Ga. May 29, 2020), *aff'd sub nom. Common Cause Georgia v. Georgia*, 17 F.4th 102 (11th Cir. 2021). *See also* ECF No. 292-9, Declaration of Brian L. Dimmick dated September 21, 2023 ("Dimmick Decl."), ¶ 5. The Court further finds the number of hours and method of calculating the lodestar for fees and costs to be reasonable for the reasons described in Plaintiffs' Preliminary Approval Motion and the Dimmick Declaration submitted in support. *See* Preliminary Approval Motion

17

at 11-14, Dimmick Decl. ¶¶ 5–9.  *See, e.g.*, *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717–19 (5th Cir. 1974); *In re Home Depot Inc.*, 931 F.3d 1065, 1083 (11th Cir. 2019).

As noted above, during Court-ordered mediation, the parties agreed on a total for fees and costs of $1,250,000 as part of the settlement, a discount from the total lodestar.  The Court finds the requested award represents a reasonable compromise between the parties taking into account the possible recovery of fees and costs Plaintiffs' counsel might obtain after trial balanced against the risks and expense of continued litigation.  Additionally, because the attorneys' fee agreement does not reduce any recovery by the class and because there is no evidence of collusion between Plaintiffs' counsel and Defendants, the parties' agreement as to attorneys' fees "is entitled to substantial weight." *Champs Sports Bar & Grill Co. v. Mercury Payment Sys., LLC*, 275 F. Supp. 3d 1350, 1356 (N.D. Ga. 2017); *Strube v. Am. Equity Inv. Life Ins. Co.*, 01-cv-1236ORL19DAB, 2006 WL 1232816, at *2 (M.D. Fla. May 5, 2006).  The Court's task in such a situation is to simply determine whether "the settlement [appears] reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney." *See, e.g.*, *Crabtree v. Vokert, Inc.*, No. 11-0529-WS-B, 2013 WL 593500, at *7 n.4 (S.D. Ala. Feb. 14, 2013).  As a result, the discount to Plaintiffs' lodestar, the relief afforded by the proposed Settlement Agreement, the experience of

Plaintiffs' counsel, and the years of litigation prior to the settlement all point to the reasonableness of the negotiated fee.

In light of these factors, together with the information provided in the parties' Preliminary Approval Motion and the Dimmick Declaration submitted in support, the Court finds that Plaintiffs' counsel's request for an award of attorneys' fees in the amount of $1,250,000 is reasonable and warranted.

## IV.  FINAL ORDER ON SETTLEMENT

In accordance with the foregoing opinion and findings, it is the **ORDER** and **DECREE** of the Court as follows:

(1) Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement Agreement and Award of Attorneys' Fees is **GRANTED**;

(2) The terms of the Settlement Agreement, including the exhibits thereto, which are attached as Appendix A to this Order, are incorporated as the Order of this Court;

(3) In accordance with the terms of the Settlement Agreement, the Court retains jurisdiction to enforce the Settlement Agreement during its term; and

(4) The Settlement Agreement shall expire, in accordance with its terms, four (4) years from the date of entry of this Order.

It is the further **ORDER** of this Court that the award of $1,250,000.00 in attorneys' fees and costs to Plaintiffs' counsel is also **GRANTED.**

**SO ORDERED**, this 2nd day of May, 2024.

_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE